JEAN WILCZYNSKI, Plaintiff-Appellant, v. RAYMOND E. GOODMAN, Defendant-Appellee.

First District (2nd Division)  No. 78-658

Opinion filed June 5, 1979.

Bruce E. Vodicka, of Arlington Heights (Suzanne Bessette, law student, of counsel), for appellant.

Maureen P. McIntyre, of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Robert Marc Chemers and Joseph B. Lederleitner, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff appeals from the dismissal of her three-count complaint by the circuit court of Cook County which charged defendant physician with failure to perform a proper abortion. An apparently normal[1] child was born to plaintiff for which she sought damages for medical and hospital costs and expenses as well as anticipated expenses required for the child's upbringing and education. The three counts were founded on the theories of negligence, breach of contract and breach of warranty. Defendant's motion to dismiss each count was based upon a number of grounds which will be later discussed in detail. The order of dismissal is general and contains no findings with respect to the complaint.

The issues presented for review are whether: (1) the complaint states a cause of action; (2) a physician who undertakes to perform an abortion and fails to terminate the pregnancy should be liable for all reasonably foreseeable damages resulting from his negligence, including costs and expenses of raising the child to majority; (3) the detriment to a patient resulting from her reliance upon the promise or warranty of a physician to bring about a specific result, in addition to payment for services rendered, is sufficient to support an action for breach of such promise or warranty; and (4) damages in the nature of costs and expenses of raising a child born as a result of such breach are proper in a contract action.

---

[1] So alleged in defendant's motion to dismiss and confirmed by plaintiff's counsel on oral argument of the cause.

For the reasons that follow, we affirm in part, reverse in part and remand the cause for further consideration.

The well-pleaded facts essential to this appeal, emerging from plaintiff's complaint, reveal that defendant was a practicing osteopathic physician licensed under the laws of Illinois who, on January 7, 1976, undertook to perform a therapeutic abortion for the purpose of terminating plaintiff's pregnancy. The pregnancy in fact was not terminated and plaintiff asserts that she was forced to bear and deliver a child on September 4, 1976, for which she has been compelled to pay the expenses of medical and hospital treatment in addition to incurring the costs of raising and educating her child.

With respect to the tort action set forth in count I, plaintiff charges defendant with negligence in the following instances: (1) failing to diagnose plaintiff's condition of pregnancy; (2) attempting to perform a therapeutic abortion upon plaintiff; (3) failing to discover that plaintiff's pregnancy was not terminated; (4) failing to consult with or refer plaintiff to another physician capable of diagnosing and treating plaintiff's condition; and (5) improperly and unskillfully attending and treating plaintiff. One or more of the foregoing were alleged to have been the proximate cause of plaintiff's child bearing, delivery and damages.

The breach of contract action set forth in count II alleges that: (1) plaintiff and defendant entered into an oral contract on January 7, 1976, whereby defendant promised to terminate plaintiff's pregnancy for which plaintiff would and did pay him the amount of monetary consideration he requested; (2) defendant performed the medical operation on plaintiff on January 7, 1976, and advised her that the pregnancy had been terminated as promised; (3) in fact the pregnancy was not terminated and plaintiff gave birth to a child; and (4) as a result of defendant's breach of contract, plaintiff paid not only for services not performed but also incurred expenses of medical and hospital care for the birth of a child and will incur further expenses for her care and education until she attains the age of majority.

For her third count, plaintiff realleged and adopted allegations contained in count I and added the claims that: (1) on the day of the operation defendant warranted to her that the abortion was successful and plaintiff was no longer pregnant; (2) she relied upon the warranty to her detriment in that her condition of pregnancy went undiagnosed until a later date when it was too late to intervene so as to prevent the child's birth; and (3) that as a result of the warranty's breach plaintiff incurred medical and hospital expenses and will incur expenses for the child's care and education until she reaches her majority.

Defendant's motion to dismiss was based upon the grounds that: (1)

plaintiff had suffered no damages in the normal birth of a normal, healthy child with no permanent harm to the mother; (2) in Illinois, pregnancy, birth and the costs and expenses of rearing a child are not legally cognizable injuries; (3) it is against public policy for a court to declare that life under any adverse conditions or to any person could be or is damaging; (4) many people would be willing to support and care for plaintiff's child if they were given the right of custody and adoption, were the child truly unwanted and burdensome to plaintiff; and (5) counts II and III fail to state the requisite separate consideration for the alleged warranty, apart from those expended by plaintiff for performance of the abortion, citing *Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 305 N.E.2d 571.

The motion was briefed and supported by memoranda submitted by both parties. Following oral argument on January 11, 1978, defendant's motion to dismiss was allowed.

Plaintiff correctly observes that the threshold consideration in this appeal is to regard all well-pleaded facts contained within the complaint as admitted and true. (*Loughman Cabinet Co. v. C. Iber & Sons, Inc.* (1977), 46 Ill. App. 3d 873, 876, 361 N.E.2d 379; *Logan v. Presbyterian-St. Luke's Hospital* (1968), 92 Ill. App. 2d 68, 74, 235 N.E.2d 851.) All reasonable inferences which can be fairly drawn from the facts alleged must also be considered as true. (*Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 290, 345 N.E.2d 503; *In re Estate of Hansen* (1969), 109 Ill. App. 2d 283, 295, 248 N.E.2d 709.) It is error to dismiss a cause of action on the pleadings unless it clearly appears that plaintiff cannot recover under any set of facts which can be proved true under the pleadings. (*Kaplan v. Keith* (1978), 60 Ill. App. 3d 804, 806-07, 377 N.E.2d 279; *Country Mutual Insurance Co. v. Drendel* (1969), 116 Ill. App. 2d 466, 252 N.E.2d 757.) Defendant does not argue to the contrary; rather, he challenges plaintiff's legal conclusions that she has causes of action, basing his position principally upon public policy considerations. He inferentially reads the complaint as seeking a judicially established policy favoring abortion contrary to the announced legislative policy of Illinois, which reaffirms the State's interest in the unborn child's right to life and in protecting such children by prohibiting abortion unless necessary to preserve the mother's life.

## I.

Plaintiff maintains that she has a constitutionally protected right to be free from unwarranted governmental intrusions into matters fundamentally affecting her person, such as the decision of whether to beget or bear a child, citing *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705. That case deemed the right to privacy recognized in *Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct.

1678, as broad enough to encompass a woman's decision as to whether to terminate a pregnancy, nor not. *Roe v. Wade* does not unqualifiedly recognize the right to privacy in abortion matters; rather, it identifies important State interests in regulation of abortion as equally important adjunctive considerations, stating (410 U.S. 113, 159, 35 L. Ed. 2d 147, 180, 93 S. Ct. 705, 730):

> "The pregnant woman cannot be isolated in her privacy. She carries an embryo and, later, a fetus, if one accepts the medical definitions of the developing young in the human uterus. See Dorland's Illustrated Medical Dictionary 478-479, 547 (24th ed 1965). The situation therefore is inherently different from marital intimacy, or bedroom possession of obscene material, or marriage, or procreation, or education, with which Eisenstadt, Griswold, Stanley, Loving, Skinner, Pierce and Meyer were respectively concerned. As we have intimated above, it is reasonable and appropriate for a State to decide that at some point in time another interest, that of health of the mother or that of potential human life, becomes significantly involved. The woman's privacy is no longer sole and any right of privacy she possesses must be measured accordingly."

Further in its opinion the Supreme Court fashioned a formula regarding the legitimate parameters of State interests (410 U.S. 113, 163-64, 35 L. Ed. 2d 147, 182-83, 93 S. Ct. 705, 731-32):

> "With respect to the State's important and legitimate interest in the health of the mother, the 'compelling' point, in the light of present medical knowledge, is at approximately the end of the first trimester. This is so because of the now-established medical fact, referred to above at 149, that until the end of the first trimester mortality in abortion may be less than mortality in normal childbirth. It follows that, from and after this point, a State may regulate the abortion procedure to the extent that the regulation reasonably relates to the preservation and protection of maternal health. Examples of permissible state regulation in this area are requirements as to the qualifications of the person who is to perform the abortion; as to the licensure of that person; as to the facility in which the procedure is to be performed, that is, whether it must be a hospital or may be a clinic or some other place of less-than-hospital status; as to the licensing of the facility; and the like.
>
> This means, on the other hand, that, for the period of pregnancy prior to this 'compelling' point, the attending physician, in consultation with his patient, is free to determine, without regulation by the State, that, in his medical judgment, the patient's pregnancy should be terminated. If that decision is reached, the

judgment may be effectuated by an abortion free of interference by the State.

With respect to the State's important and legitimate interest in potential life, the 'compelling' point is at viability. This is so because the fetus then presumably has the capability of meaningful life outside the mother's womb. State regulation protective of fetal life after viability thus has both logical and biological justifications. If the State is interested in protecting fetal life after viability, it may go so far as to proscribe abortion during that period, except when it is necessary to preserve the life or health of the mother."

To the same effect is a companion case, *Doe v. Bolton* (1973), 410 U.S. 179, 35 L. Ed. 2d 201, 93 S. Ct. 739.

Recognizing the currency of *Roe v. Wade* and *Doe v. Bolton*, the Legislature enacted the Illinois Abortion Law of 1975 with its enunciated public policy contained in section 1 thereof (undisturbed by the decision in *Wynn v. Carey* (7th Cir. 1979), ___ F.2d ___), which reads as follows (Ill. Rev. Stat. 1977, ch. 38, par. 81—21):

"It is the intention of the General Assembly of the State of Illinois to reasonably regulate abortion in conformance with the decisions of the United States Supreme Court of January 22, 1973. Without in any way restricting the right of privacy of a woman or the right of a woman to an abortion under those decisions, the General Assembly of the State of Illinois do solemnly declare and find in reaffirmation of the longstanding policy of this State, that the unborn child is a human being from the time of conception and is, therefore, a legal person for purposes of the unborn child's right to life and is entitled to the right of life from conception under the laws and Constitution of this State. Further, the General Assembly finds and declares that longstanding policy of this State to protect the right to life of the unborn child from conception by prohibiting abortion *unless necessary to preserve the life of the mother* is impermissible only because of the decisions of the United States Supreme Court and that, therefore, if those decisions of the United States Supreme Court are ever reversed or modified or the United States Constitution is amended to allow protection of the unborn then the former policy of this State to prohibit abortions unless necessary for the preservation of the mother's life shall be reinstated." (Emphasis added.)

From the foregoing statute and complaint, defendant argues that plaintiff's suit is not cognizable in law, should await legislative sanction and should not be legitimized by judicial fiat. He says that plaintiff seeks damages solely because she claims her child should never have been born

at all, and her existence is, therefore, a result of "wrongful birth."[2] Plaintiff counters, and her complaint reveals, that in addition to pursuing compensation for raising and educating the child, she also seeks an award of other damages, such as medical and hospital expenses. Her memorandum in opposition to the motion to dismiss and brief on appeal refer also to damages for pain and suffering of childbirth, plus the fee charged by defendant for his services, although her initial pleading does not clearly articulate these latter elements of damage.

■■ A careful examination of the Illinois Abortion Act of 1975 reveals that the announced public policy sanctions abortions where "* * * necessary to preserve the life of the mother" (Ill. Rev. Stat. 1977, ch. 38, par. 81—21), and, under the facts alleged in this case, does not impermissibly collide with the constitutional guarantees enunciated in *Roe v. Wade* and *Doe v. Bolton*. Those provisions relating to abortion prior to the end of the first trimester reveal that an abortion may be undertaken "[w]ith the written consent of the woman's spouse, unless the abortion is certified by a licensed physician to be necessary in order to preserve the life or health of the mother." (Ill. Rev. Stat. 1977, ch. 38, par. 81—23(3).) Plaintiff's complaint alleges that the abortion operation took place on January 7, 1976, and the birth of the child occurred on September 4, 1976, a period of 240 days, thereby permitting the inference that the pregnancy here involved fell within the first trimester of pregnancy, statutorily defined as meaning the first 12 weeks of gestation commencing with ovulation. (Ill. Rev. Stat. 1977, ch. 38, par. 81—22(1).) No allegation is made concerning spousal consent or physician certification and defendant makes no point of these omissions. The complaint does, however, assert that plaintiff sought a "therapeutic abortion," which, although not defined by Illinois statutory or case law, has been interpreted as meaning an abortion induced when pregnancy constitutes a serious threat to the life of the mother. (*McCandless v. State* (1956), 6 Misc. 2d 391, 166 N.Y.S.2d 272, 276; see also Webster's Third New International Dictionary 2372 (1976).) With section 33(3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 33(3)) as the pertinent guide, the instant complaint must be liberally construed with a view toward doing substantial justice between the parties. At this stage of the proceedings, therefore, the complaint should be read as having pleaded a legally sanctioned abortion either under previous State policy or under the present Illinois Abortion Law of 1975. Plaintiff's action may be maintained thereunder without contravening

---

[2] The term "wrongful birth" is not found in plaintiff's complaint. It is usually applied to those actions seeking damages solely by virtue of the birth of an unwanted child and its attendant expenses of upbringing, without reliance upon ordinary negligence doctrine. (See discussion in Annot., 83 A.L.R.3d 15, 19 (1978).) Plaintiff does describe the child born as "unplanned, though not necessarily unwanted," in her brief.

either the precepts of *Roe v. Wade* and *Doe v. Bolton,* or the established legislative public policy of the State of Illinois favoring life over abortion.[3]

## II.

We turn now to an examination of the individual counts for the purpose of ascertaining the existence or absence of a cognizable cause of action in each. Plaintiff theorizes that count I sufficiently articulates an action in negligence because it alleges that the physician failed to possess or exercise the requisite skill and diligence in performing the operation of abortion for which he was engaged to plaintiff's detriment. She deems herself entitled to damages for all the ordinary and natural results of the omission or commission of the alleged acts of negligence as are usual and might have reasonably been expected, relying upon *Dimitrijevic v. Chicago Wesley Memorial Hospital* (1968), 92 Ill. App. 2d 251, 236 N.E.2d 309; *Scardina v. Colletti* (1965), 63 Ill. App. 2d 481, 211 N.E.2d 762; and *Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 101, 102, 191 N.E.2d 436, including the cost of raising and educating her child. Defendant does not question the principle for which the foregoing cases are cited; instead, he urges that plaintiff realistically seeks damages for "wrongful birth," an action which he contends is alien to and represents a departure from Illinois law.[4]

Extensive examinations of cases involving unwanted children appear in a recent Michigan case, *Bushman v. Burns Clinic Medical Center* (1978), 83 Mich. App. 453, 268 N.W.2d 683, and in a recent annotation published by American Law Reports Annotated, Third Series (83 A.L.R.3d 15 (1978)), which extrapolate and consider the ongoing inquiries in the various jurisdictions into legal, moral, practical and philosophical concerns involved. The many collated cases reveal actions for "wrongful birth," in which parents and others seek recompense for the birth of an unwanted child; "wrongful life," in which the unwanted child brings a similar action; and negligence actions seeking similar damages but based upon the familiar rules of negligence, among other types of actions. The bases for such litigation include negligently performed vasectomies,

---

[3] We need not and do not consider possible actions resulting from unsuccessful nontherapeutic abortions under the facts here alleged.

[4] Although, as defendant asserts, no Illinois case is found involving an action to recover damages of this kind for negligent abortion, two Illinois cases involved alleged improperly performed sterilization operations resulting in unwanted children, *Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 305 N.E.2d 571, and *Doerr v. Villate* (1966), 74 Ill. App. 2d 332, 220 N.E.2d 767. Because *Rogala* and *Doerr* were based upon alleged breaches of contract and warranty, the measure of damages are necessarily different than those contemplable in a negligence action such as that stated in the present plaintiff's count I. (*Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, 329, 178 N.E.2d 303.) We shall return to the above-cited cases upon our consideration of counts II and III of the instant complaint which purport to sound in breach of contract and breach of warranty, respectively.

sterilizations and abortions, failure to properly advise of the necessity of appropriate abortions or sterilizations under certain conditions; and the negligent filling of a prescription by dispensing a tranquilizer in place of the prescribed birth control drug, among other cases. Because in the instant case a parent seeks damages based upon traditional negligence foundations, claiming as foreseeable the costs and expenses of raising an apparently normal and healthy child in addition to medical and hospital liabilities resulting from an unsuccessful abortion, our examination of the aforesaid case will be limited to representative decisions similarly concerned.

In *Custodio v. Bauer* (1967), 251 Cal. App. 2d 303, 59 Cal. Rptr. 463, plaintiffs, the mother and father of nine children, sued defendant physicians for failure to exercise a reasonable degree of care or skill in the sterilization process, among other grounds, after the plaintiff mother of nine children learned of her pregnancy following the sterilization operation. In permitting the costs and expenses of raising a child as a possible element of damage, the court reviewed cases from many jurisdictions and concluded (251 Cal. App. 2d 303, 323-24, 59 Cal. Rptr. 463, 476):

> "Where the mother survives without casualty [mental suffering, crippling or death] there is still some loss. She must spread her society, comfort, care, protection and support over a larger group. If this change in the family status can be measured economically it should be as compensable as the former losses."

Commenting further (251 Cal. App. 2d 303, 325, 59 Cal. Rptr. 463, 477):

> "On the present state of the record it cannot be ascertained to what extend plaintiffs, if they establish a breach of duty by defendants, are entitled to damages. It is clear that if successful on the issue of liability, they have established a right to more than nominal damages."

In a later California case, *Stills v. Gratton* (1976), 55 Cal. App. 3d 698, 127 Cal. Rptr. 652, two physicians were found amenable to liability in a negligence action for similar damages alleged to have resulted from the negligent performance of an abortion. See also *Sherlock v. Stillwater Clinic* (Minn. 1977), 260 N.W.2d 169; *Anonymous v. Hospital* (1976), 33 Conn. Sup. 126, 366 A.2d 204; *Bowman v. Davis* (1976), 48 Ohio St. 2d 41, 356 N.E.2d 496; *Ziemba v. Sternberg* (1974), 45 App. Div. 2d 230, 357 N.Y.S.2d 265, 268; *cf. Clegg v. Chase* (1977), 89 Misc. 2d 510, 391 N.Y.S.2d 966; *Vaughn v. Shelton* (Tenn. App. 1974), 514 S.W.2d 870; *Hackworth v. Hart* (Ky. 1971), 474 S.W.2d 377; *Jackson v. Anderson* (Fla. App. 1970), 230 So. 2d 503.

The contrary view is maintained in other jurisdictions. Representative among these decisions is *Rieck v. Medical Protective Co.*

(1974), 64 Wisc. 2d 514, 219 N.W.2d 242. There the parents of an apparently healthy child born after the physician's failure to make a timely diagnosis of pregnancy claimed they were denied the right to procure an abortion because of this negligence. The parents were held to be without a cause of action for expenses in raising their child, the Wisconsin Supreme Court assuming as a matter of law that the birth of a child conferred benefits upon the parents which outweighed any economic burden, stating (64 Wisc. 2d 514, 518-19, 219 N.W.2d 242, 244-45):

> "To permit the parents to keep their child and shift the entire cost of its upbringing to a physician who failed to determine or inform them of the fact of pregnancy would be to create a new category of surrogate parent. Every child's smile, every bond of love and affection, every reason for parental pride in a child's achievements, every contribution by the child to the welfare and well-being of the family and parents, is to remain with the mother and father. For the most part, these are intangible benefits, but they are nonetheless real. On the other hand, every financial cost or detriment—what the complaint terms 'hard money damages'—including the cost of food, clothing and education, would be shifted to the physician who allegedly failed to timely diagnose the fact of pregnancy. We hold that such result would be wholly out of proportion to the culpability involved, and that the allowance of recovery would place too unreasonable a burden upon physicians, under the facts and circumstances here alleged."

Similar language is found in *Terrell v. Garcia* (Tex. Civ. App. 1973), 496 S.W.2d 124, 128, *cert. denied* (1974), 415 U.S. 927, 39 L. Ed. 2d 484, 94 S. Ct. 1434. Holding to the same effect are *Gleitman v. Cosgrove* (1967), 49 N.J. 22, 227 A.2d 689; *cf. Betancourt v. Gaylor* (1975), 136 N.J. Super. 69, 344 A.2d 336; *Ball v. Mudge* (1964), 64 Wash. 2d 247, 391 P.2d 201; *Shaheen v. Knight* (1957), 11 Pa. D. & C. 2d 41, 45-46.

A third approach was taken by the court in *Troppi v. Scarf* (1971), 31 Mich. App. 240, 187 N.W.2d 511, which followed section 920 of the Restatement of Torts. That section provides (Restatement of Torts §920 (1939)):

> "Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred upon the plaintiff a special benefit to the interest which was harmed, the value of the benefit conferred is considered in mitigation of damages, where this is equitable."

In *Troppi*, defendant dispensed a mild tranquilizer in lieu of an oral contraceptive resulting in a "wrongful birth" action which sought damages including costs and expenses of raising the child, which the court

recognized. At the same time, defendants were permitted to prove such benefits as may accrue to the plaintiff by reason of the birth as an offset to plaintiff's damages. (*Cf. Bushman v. Burns Clinic Medical Center.*) Declining to follow the so-called "benefits rule" as unworkable because of the uncertain and speculative nature of the claimed damages, the court in *Terrell v. Garcia*, in which plaintiff brought an action against a physician for a negligently performed bilateral tubal ligation, affirmed the dismissal on summary judgment of the cause of action.

Viewed from still another perspective, the court in *Coleman v. Garrison* (Del. Super. 1974), 327 A.2d 757, *affirmed*, 349 A.2d 8, allowed parents to maintain a cause of action for an unsuccessful bilateral tubal ligation operation, but limited damages to pregnancy-related costs and expenses, and pain and suffering, the court stating (327 A.2d 757, 761):

> "It is the view of this Court that there should be no cause of action so established as to allow damages for 'wrongful life.' The preciousness of human life should not be held to vary with the circumstances surrounding birth. To make such a determination would, indeed, raise the unfortunate prospect of ruling, as a matter of law, that under certain circumstances a child would not be worth the trouble and expense necessary to bring him into the world. It is not difficult to understand the reluctance of many distinguished jurists to find that the birth of a child is an injury for which plaintiff should deserve an award of damages.
>
> That is not to say, however, that the plaintiff has not suffered a recognizable injury where avoidable pregnancy has resulted from faulty medical procedure. To the contrary, a ruling that no recognizable cause of action could exist under such circumstances would leave the medical profession virtually immune from liability for improper treatment of patients justifiably seeking to avoid pregnancy.
>
> A more appropriate resolution of the difficulties presented, and the one hereby adopted, is to view the action as one for 'wrongful pregnancy' rather than one for 'wrongful life' thereby limiting the scope of the injury to the very real expenses, and obvious difficulties attending the unexpected pregnancy of a woman.
>
> Limitation of the cause of action in such a manner is valid since to do otherwise, would be to invite unduly speculative and ethically questionable assessments of such matters as the emotional affect [*sic*] of a birth on siblings as well as parents, and the emotional as well as pecuniary costs of raising an unplanned and, perhaps, an unwanted child in varying family environments. Speculative damages are, quite simply, not recoverable in this State."

The problems attendant upon actions involving such unwanted children have not escaped attention and treatment in legal periodicals which have thoughtfully addressed them in various notes and comments. The majority appear to favor recognizing the cause of action on various theories and permitting damages without limitations.[5]

■■ The cases referred to reveal that the principal controversy in negligent birth control actions revolves around the damage question: should a physician who performs an operation for sterilization or abortion be held to have foreseen as damages the cost of bearing, raising and educating an apparently normal, healthy child born by virtue of his culpable negligence? Among those cases where recovery is denied, the *ratio decidendi* appears to be a lack of foreseeability and an absence of proportionality for such damages (see, *e.g., Rieck v. Medical Protective Co.*). In other cases the ground identified is public "sentiment" that the birth of a child as a matter of law cannot be deemed a compensable injury to its parents (see, *e.g., Shaheen v. Knight; Terrell v. Garcia*). The result we reach is similar, but is rooted in public policy as annunciated by the General Assembly. No case cited by either party, nor any found in our own examination, involves the strong condemnation of abortion and support of the right to life as expressed in section 1 of the Illinois Abortion Law of 1975 (Ill. Rev. Stat. 1977, ch. 38, par. 81—21), quoted earlier in this opinion. In our judgment, a public policy which deems precious even potential life while yet in the womb, at such cost and expense that condition may entail, does not countenance as compensable damage to its parent or parents those additional costs and expenses necessary to sustain and nurture that life once it comes to fruition upon and after successful birth. The existence of a normal, healthy life is an esteemed right under our laws, rather than a compensable wrong. Plaintiff perceives growing popular acceptance of abortion; however, "[t]he public policy as expressed by legislative acts is not a matter for the courts. Their duty is to apply the law as they find it." (*Holmstedt v. Holmstedt* (1943), 383 Ill. 290, 294, 49 N.E.2d 25.) If such damages are to be recognized in cases of this character, they should be evaluated by legislative study first, with consideration given to changing professional, economic, social and moral standards and conditions. *Zepeda v. Zepeda* (1963), 41 Ill. App. 2d 240, 190 N.E.2d 849, *cert. denied* (1964), 379 U.S. 945, 13 L. Ed. 2d 545, 85 S. Ct. 444.

---

[5] See, *e.g.*, Note, *Wrongful Conception: Who Pays for Bringing Up Baby?*, 47 Fordham L. Rev. 418 (1978); Comment, *Liability For Failure Of Birth Control Methods*, 76 Colum. L. Rev. 1187 (1976); Note, *Wrongful Birth In The Abortion Context*, 53 Denver L. J. 501 (1976); Comment, *Strict Liability: A "Lady In Waiting" For Wrongful Birth Cases*, 11 Cal. W.L. Rev. 136 (1974); Note, *Recovery Of Child Support For "Wrongful Birth"*, 47 Tul. L. Rev. 225 (1972); 13 Wm. & Mary L. Rev. 666 (1972); Note, *The Birth Of A Child Following An Ineffective Sterilization Operation As Legal Damage*, 9 Utah L. Rev. 808 (1965).

■ Defense counsel, in oral argument, asserted that even costs and expenses of pregnancy and birth should not be compensable by virtue of the public policy of our State. With this we must disagree. Damages based upon hospital and medical costs attending plaintiff's unwanted pregnancy, as they affect her person, have little to do with the child's right to life and its concomitant expense of upbringing and education. The practical effect of such a position would allow tortious conduct by a medical practitioner in such cases to be totally uncompensable. Further, unwarranted immunity would thereby be extended to the medical profession if damages ensuing from improper treatment were to be denied. *Coleman v. Garrison.*

■ Accordingly, we hold that count I sets forth a cognizable action for negligent performance of an abortion procedure, with damages limited to pregnancy and birth related costs, expenses, and such associated elements of personal injury action as may be pleaded. The dismissal of count I, as thus modified, is therefore reversed.

### III.

Remaining for our consideration are the actions purportedly set forth in counts II and III of the instant complaint sounding in breach of an express contract to effect a particular result and breach of warranty, respectively.

The allegations relating to the promise made by defendant physician to plaintiff as set forth in count II were that: on the 7th day of January, 1976 plaintiff entered into an oral contract with the defendant "who promised to terminate the pregnancy of the plaintiff for a valuable consideration;" plaintiff paid defendant the sum of money requested by him for the performing of said therapeutic abortion; the pregnancy was not terminated and on September 4, 1976, plaintiff gave birth to a child; and, as a result of defendant's breach of contract, plaintiff not only paid for services which were not performed but incurred expenses of medical and hospital care for the birth of the child, and has and will incur expenses for the care and education for the child until she attains her majority. The promise set forth was not simply to perform an operation, with attendant inferences to do so with the requisite care, skill and diligence of a surgeon (*Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, 328, 178 N.E.2d 303), but rather to achieve the specific result or "cure" of "terminating the pregnancy." (*Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 66-67, 305 N.E.2d 571; *Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 105-10.) The consideration to be paid defendant by plaintiff is not alleged to have been in addition to any emolument previously promised to the physician, but is pleaded as a concurrent consideration in return for the particular act to be performed.

■■ ■ Promises to effect a specific result or cure, in this context, are treated similarly to contracts of warranty assuring the success of an operation. In substance, the difference between the effect of a promised result and the effect of the assurance of success is largely a matter of semantics. The two concepts are often used interchangeably.[6] In Illinois, such contracts must be express, relied upon by the promisee, and supported by separate consideration. (*Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 65, *Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 106-07.) In *Doerr v. Villate* (1966), 74 Ill. App. 2d 332, 220 N.E.2d 767, the court sanctioned damages for special care and attention necessary for the mentally retarded, physically deformed child born as a result of an unsuccessful sterilization, in addition to medical and hospital expenses. In holding that the complaint there was sufficient to state an action in contract so as to defeat the running of the tort statute of limitations, no mention was made of such additional compensation; however, there the court did not undertake to distinguish between a contract to produce a specific result from a contract to exercise reasonable skill in furnishing treatment. In the absence of pleading a separate consideration in return for the alleged promise to "terminate the pregnancy" in the present complaint, an essential element of the contractual cause of action was omitted. We must, therefore, affirm the dismissal of count II.

■■ As to count III, it is alleged that after the operation defendant physician "warranted" to plaintiff that the therapeutic abortion performed on January 7, 1976, was successful, upon which plaintiff relied to her detriment, and that her condition of pregnancy went undiagnosed until such date as to have made impossible a further attempt at abortion. The alleged "warranty" carries with it no allegation of consideration at all, except, possibly, reliance thereon by plaintiff. No additional separate consideration is pleaded. Assuming, *arguendo*, that the statement attributed to defendant could indeed be construed as a warranty, the dismissal of count III was nevertheless correct since, as previously noted

---

[6] "Courts confronted with the question whether a physician may be liable in contract for breach of express warranty have agreed generally that a physician is not an insurer of the success of his treatment and absent an express agreement, does not warrant or guarantee that he will effect a given result." (*Sard v. Hardy* (1977), 281 Md. 432, 451-52, 379 A.2d 1014, 1026.) " 'This ° ° ° is an action for the breach of an alleged oral agreement whereby defendant warranted that his radium treatments would not leave a permanent scar.' [Citation.] The court found that the evidence was sufficient to establish an oral contract of warranty. It is generally recognized that, where there is proof of an express contract, the physician can be held liable for a promise to effect a cure or a certain result." (*Custodio v. Bauer*, 251 Cal. App. 2d 303, 315, 59 Cal. Rptr. 463, 471.) "Therefore the courts which have recognized an action based upon the express warranty of a physician to effect a particular cure have distinguished between so-called therapeutic reassurances that the patient will recover and express promises that treatment will produce a specific result and have stated that it is doubtful that an action for breach of warranty can ever result from a physician's expression of opinion." (*Rogala v. Silva*, 16 Ill. App. 3d 63, 67.)

with respect to count II, a separate consideration is required to support such a warranty. (*Rogala v. Silva; Gault v. Sideman.* See also *Herrera v. Roessing* (Colo. App. 1975), 533 P.2d 60, 62; *Coleman v. Garrison,* 327 A.2d 757, 763; *Clegg v. Chase,* 391 N.Y.S.2d 966, 967, 89 Misc. 2d 510, 511.) In *Sard v. Hardy,* proof of a separate consideration would be required only where, as here, the alleged warranty was made following the operation. (281 Md. 432, 451-52, 379 A.2d 1014, 1026.)[7] The judgment dismissing count III must also, therefore, be affirmed.

For the foregoing reasons, the judgment will be affirmed in part and reversed in part and remanded for proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

STAMOS, P. J., and PERLIN, J., concur.

---

[7] An illuminating discussion of the contractual warranty and promise to effect a particular result appears in Note, *Reassurance Or Contract: The Physician Caught Between The Scylla and The Charybdis,* 41 U. Mo. K.C. L. Rev. 118 (1972).