NORMAN M. ZEITZ *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF GLENVIEW *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—91—2010

Opinion filed March 27, 1992.

Law Offices of Dennis L. Karns, of Chicago, for appellants.

James S. Gordon and Edward Slovick, both of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs Norman M. Zeitz, Helen Zeitz, Norman D. Zeitz, Richard M. Zeitz and Lakewoods Development Corporation brought an action seeking declaratory and injunctive relief from certain zoning ordinances enacted by one of the defendants, Village of Glenview, and damages based upon inverse condemnation and improper taking of plaintiffs' property. The trial court granted the defendants' motion to strike the second amended complaint and to dismiss action with prejudice. The plaintiffs appeal the granting of that order.

The facts are not in dispute. All issues presented for review are based upon the sufficiency of the plaintiffs' second amended complaint.

The Grove is an 82-acre tract of land located in the Village of Glenview (Glenview). It is a national historic landmark. In 1979 Glenview enacted ordinances (Nos. 2280 and 2281) which established an environmentally sensitive area (ESA) within its boundaries. Ordinance No. 2280 also authorized Glenview's board of trustees to designate a "Primary Area" within an ESA for land requiring the highest degree of protection from adverse effects of incompatible development.

The ESA consisted of 278 acres of which approximately 119 acres were designated a primary area. Ordinance No. 2281 additionally mandated the creation of R-E (residential regulations) which, among other uses, permitted the development of single-family residences with a minimum lot size of not less than two acres and decreed that such R-E zoning district was to be applied to all privately owned property within a primary area.

The individual plaintiffs are the owners of approximately 10.1 acres of vacant land in the ESA. Plaintiffs' land was involuntarily annexed by Glenview on May 2, 1983. Lakewoods Development Corporation (Lakewoods) has an option to purchase the aforesaid 10.1 acres of real estate. Prior to April 3, 1990, the property was zoned as R-1 (residential district) requiring a minimum lot size of only one acre.

On April 3, 1989, plaintiffs filed an application for subdivision approval proposing a 10-lot subdivision. Glenview's plan commission found the plan deficient and concluded that the application was premature.

On July 18, 1989, after notice and hearing Glenview adopted ordinance No. 3010, which imposed a six-month moratorium on subdivision applications and approvals in the ESA to determine what changes, if any, in regulation and zoning were necessary to protect the environmentally significant area within which plaintiffs' lots were located.

On January 16, 1990, Glenview adopted ordinance No. 3078 containing regulations governing development in the ESA. The moratorium expired on January 18, 1990.

On April 3, 1990, defendants enacted ordinance No. 3111, which applied the R-E (two-acre minimum lot size) zoning classification to all properties within the ESA that were previously zoned R-1 (one-acre minimum lot size). Ordinance No. 3111 did not apply the R-E zoning classification to properties zoned R-2, R-4, or I-1 within the same ESA. Thus, a number of parcels in the area, including plaintiffs' 10-acre tract, were rezoned from R-1 to R-E pursuant to ordinance No. 3111.

On October 5, 1989, Lakewoods filed a complaint for declaratory judgment and seeking a preliminary injunction. Said complaint was stricken on June 6, 1990. Thereafter, the Zeitz plaintiffs joined with Lakewoods in their amended complaint for declaratory judgment and for an injunction. On November 9, 1990, the trial court struck the amended complaint. On December 20, 1990, plaintiffs were granted leave to file their second amended complaint. The second amended complaint consisted of four counts: Count I sought declaratory and injunctive relief from application of defendant's moratorium ordinance No. 3010; count II sought declaratory and injunctive relief from application of defendants and rezoning ordinances 3078 and 3111; count III sought damages for inverse condemnation and improper taking of plaintiffs' property; and count IV sought a writ of *mandamus* for condemnation.

On May 21, 1991, the trial judge entered an order dismissing the second amended complaint with prejudice. Subsequently, plaintiffs filed this timely appeal.

Plaintiffs raise three issues on appeal, all relating to the sufficiency of the second amended complaint. Plaintiffs argue that the second amended complaint alleges sufficient facts to (1) state a cause of action for declaratory and injunctive relief from the retroactive application of Glenview's moratorium and rezoning ordinances to plaintiffs' property and to plaintiffs' application of subdivision approval; (2) state a cause of action for damages based upon an inverse condemnation and an improper taking of plaintiffs' prop-

erty; and (3) support a finding that defendants should be estopped to deny plaintiffs a hearing on their application for subdivision approval in accordance with defendants' own ordinances in effect at the time the application was filed. Defendants maintain that the trial court properly dismissed plaintiffs' second amended complaint with prejudice.

Illinois is a fact-pleading State. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005, 1008.) Although pleadings are to be liberally construed (Ill. Rev. Stat. 1989, ch. 110, par. 2—603(c)), a complaint must "contain[ ] such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." (Ill. Rev. Stat. 1989, ch. 110, par. 2—612(b).) "Liberal construction of a pleading requires that 'no pleading is to be deemed bad which shall contain such information as shall reasonably inform the opposite party of the nature of the claim.' " *Griffis v. Board of Education, District 122* (1979), 72 Ill. App. 3d 784, 787, 391 N.E.2d 451, quoting *Crosby v. Weil* (1943), 382 Ill. 538, 48 N.E.2d 386.

In Illinois a pleader is not required to set forth his evidence. To the contrary, a pleading is only required to allege ultimate facts and not the evidentiary facts tending to prove such ultimate facts. (*Board of Education of Kankakee School District No. 111 v. Kankakee Federation of Teachers Local No. 886* (1970), 46 Ill. 2d 439, 264 N.E.2d 18.) In *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 307-08, 430 N.E.2d 1005, 1008, the Illinois Supreme Court stated:

> "The purpose of pleadings is to present, define and narrow the issues and limit the proof needed at trial. Pleadings are not intended to erect barriers to a trial on the merits but instead to remove them and facilitate trial. The object of pleadings is to produce an issue asserted by one side and denied by the other so that a trial may determine the actual truth."

When considering a motion to dismiss, all well-pleaded facts and all reasonable inferences which can be fairly drawn from the facts alleged must be considered as true. (*Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 391 N.E.2d 479.) "It is error to dismiss a cause of action on the pleadings unless it clearly appears that plaintiff cannot recover under any set of facts which can be proved true under the pleadings." (*Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 54, 391 N.E.2d 479, citing *Kaplan v. Keith* (1978), 60 Ill. App. 3d 804, 806-07, 377 N.E.2d 279.) On appeal, a motion to dismiss for failure to state a cause of action should only be affirmed where no

set of facts can be proven under pleadings which will entitle plaintiff to relief. *Griffis v. Board of Education, District 122* (1979), 72 Ill. App. 3d 784, 391 N.E.2d 451.

Admittedly, the line between ultimate facts and conclusions of law is not always easily drawn. (*Van Dekerkhov v. City of Herrin* (1972), 51 Ill. 2d 374, 282 N.E.2d 723.) However, based upon the aforementioned established procedural rules and the following facts, we must find that the plaintiffs alleged sufficient facts to withstand a section 2—615 motion to dismiss and reverse the trial judge and remand for a hearing on the merits of plaintiffs' charges.

■ Zoning is primarily a legislative function, not a judicial one. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 312 N.E.2d 625.) "Zoning ordinances, which must bear a reasonable relation to the public health, safety and welfare, are presumed valid." (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 310, 469 N.E.2d 183.) A party challenging a zoning ordinance has the burden of proving by clear and convincing evidence that the application of the ordinance to his or her property is unreasonable and arbitrary and bears no substantial relationship to the public, health, safety, morals and welfare. *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 469 N.E.2d 183; *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899.

■ Six factors have been considered by our courts to be particularly relevant in reviewing whether zoning restrictions are reasonable as applied to a particular piece of land or unreasonable restraints on the property rights of the owner. As set forth in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, these factors are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of plaintiff's property· values promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public compared to the hardship imposed on the individual property owner; (5) the suitability of the subject property for the zoned purpose; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in the community. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65; see also *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 311, 469 N.E.2d 183.) The court in *La Salle National Bank* further com-

mented that "[n]o one factor is controlling." *La Salle National Bank*, 12 Ill. 2d at 47.

The law concerning challenges to zoning actions by a legislative body is well settled and not in dispute in this case. These rules of law have become so well settled as to be almost axiomatic. Yet in this case the consideration of the various ordinances was not made pursuant to the stated rules of law. The controversy in this case did not arise upon an answer or after trial, it arose on a motion to strike and dismiss the second amended complaint under section 2—615 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—615.) Plaintiffs' second amended complaint contains some 116 allegations and is 42 pages long, and despite defendants' argument to the contrary, the complaint alleges sufficient allegations to entitle plaintiffs to a hearing.

■ In determining whether plaintiffs have sufficiently stated a cause of action, we look to the areas of consideration set forth by the Illinois Supreme Court. First, we look to allegations of the existing use and zoning of nearby property and property within the so-called ESA. The complaint alleges *inter alia*: that the R-E residential regulations were not applied to any residential property within the ESA until April 3, 1990; Glenview approved a height variation for a building proposal within the ESA; Motivation Media Corporation constructed an office building within the ESA and partially within the primary area; in 1986, the Blocker subdivision of six acres adjacent to plaintiffs' property and within the primary area was approved; and in 1987, an individual was issued a building permit for a single-family residence within the ESA without storm sewers and including a septic field.

Second, we look to the extent to which property values are diminished by the zoning restrictions. Plaintiffs' complaint alleges that plaintiffs' proposed use could cause no injury to or deterioration of the value of other property. Plaintiffs also allege that downzoning by the defendants renders the plaintiffs' property economically unfeasible; that defendants' failure to act on their application for subdivision approval and their downzoning of plaintiffs' property has substantially impaired and reduced the value of their property by over $1 million; and that defendants' denial of their application deprives plaintiffs of the best use of their property and destroys the value thereof.

Third, we look to the extent to which destruction of the plaintiffs' property values promotes the health, safety and welfare of the people of Glenview. Plaintiffs allege, *inter alia*, that plaintiffs' pro-

posed development would be consistent with the environment, beauty and surrounding ecology; the proposed storm and sanitary sewers would cause less damage to the environment than existing septic fields, would remove drainage problems, and otherwise enhance the environment. Further, plaintiffs allege that the condition of the land is catastrophic and that under the current trend both prairie and woodland vegetation would die.

Fourth, we look to the relative gain to the public compared to the hardship imposed on the individual. Plaintiffs allege, *inter alia*, the subdivision would be consistent with the environment; the area has suffered significant environmental degradation; in their present state, indigenous prairie and woodland vegetation will die; active management is required and plaintiffs' plan includes an emphasis on environmental restoration and will restore prairie to the site within two years; and plaintiffs' property does not lie within the immediate perimeter of the Grove and its proposed development would have no adverse impact upon the Grove.

Fifth, the complaint charges that the property is suitable for the purposes of an R-1 zoning in that the plaintiffs' proposed subdivision plan will return the property to a high level of environmental importance.

Finally, with respect to the length of time the property has been vacant considered in the context of the development of the vicinity of the object property, the complaint alleges that the property has been vacant since 1983 and that much of the surrounding property has been developed with a multitude of uses.

Considering the allegations of the plaintiffs' second amended complaint in the light most favorable to the plaintiffs and taking as true all well-pleaded facts and inferences which can be drawn therefrom (*J.J. Harrington & Co. v. Timmerman* (1977), 50 Ill. App. 3d 404, 407, 365 N.E.2d 721), we find those allegations sufficient to set forth a cause of action upon which relief may be granted upon the trial of the matter. Plaintiffs must still prove their allegations, and no single factor alleged by plaintiffs is controlling. The plaintiffs' burden of proof with regard to zoning challenges is by clear and convincing evidence. (*La Salle National Bank v. City of Park Ridge* (1979), 74 Ill. App. 3d 647, 393 N.E.2d 623.) Moreover, a trial court's conclusion on the evidence presented will not be disturbed on review unless contrary to the manifest weight of the evidence (*New Lenox State Bank v. County of Will* (1990), 205 Ill. App. 3d 457, 563 N.E.2d 505).

Although plaintiffs' complaint in this case may not win any prizes for brevity, we find, based on the above rules, that it is sufficient to withstand a section 2—615 motion to dismiss.

For the reasons set forth above, the trial court's order dismissing plaintiffs' second amended complaint is reversed and the case is remanded with instructions to reinstate plaintiffs' second amended complaint.

Reversed and remanded with directions.

LORENZ and GORDON, JJ., concur.