BENJAMIN G. ELSER, Appellee, *vs.* THE VILLAGE OF GROSS POINT *et al.* Appellants.

*Opinion filed June 16, 1909.*

EASEMENTS—*owner of an easement cannot materially increase burden on servient estate.* A village having an easement to drain swampy land through an artificial channel, upon lands where the water would not flow in a state of nature, has no right to enlarge and deepen the channel and thereby materially increase the burden upon the servient estate.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding.

FREDERICK A. BROWN, and WILLIAM R. T. EWEN, JR., (CARLETON R. BALZER, of counsel,) for appellants.

PEASE, SMIETANKA & POLKEY, (FRANCIS LACKNER, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

On November 8, 1905, Benjamin G. Elser filed a bill in the circuit court of Cook county to enjoin the village of Gross Point and Joseph Braun from making certain changes in a culvert, on the ground that such proposed changes

would injure and damage complainant's land. A temporary
injunction was granted, which was afterwards, on motion
of the defendants, dissolved and the bill dismissed. From
this decree Elser appealed to this court, where the decree of
the circuit court dissolving the injunction and dismissing
the bill was reversed and the cause remanded to the circuit
court for further proceedings not inconsistent with the views
of this court expressed in the opinion. (*Elser* v. *Village
of Gross Point,* 223 Ill. 230.) Upon the re-instatement of
the cause in the circuit court the defendants filed a joint an-
swer denying all of the material charges in the bill. A rep-
lication being filed, the cause was referred to a master in
chancery to take the evidence and report his conclusions of
law and fact. The master found that the evidence sustained
the material allegations of the bill and recommended a de-
cree perpetually enjoining the defendants from proceeding
with the contemplated improvement. To this report de-
fendants filed a large number of objections, all of which
were overruled by the master. The objections before the
master were, by the order of the court, heard as exceptions
to the report and overruled and a decree entered in accord-
ance with the prayer of the bill and the recommendation of
the master. The present appeal is prosecuted by defendants
below to reverse this final decree.

Church road is a public street or highway running north
and south on the top of a ridge parallel with and a short
distance west of the western shore of Lake Michigan. This
ridge is the watershed which separates the waters in Skokie
swamp on the west from Lake Michigan on the east. On
the western slope of this divide is located the village of
Gross Point, while on the eastern slope, between the crest
of the ridge and Lake Michigan, are located the villages of
Kenilworth and Wilmette. Skokie swamp is a body of low,
marshy land about two miles in width and from twenty to
thirty miles in length, lying west of the watershed. In a
state of nature none of the water from Skokie swamp flowed

into Lake Michigan.     Appellee, Elser, is the owner in fee of about six acres of land lying within the corporate limits of Gross Point, fronting on the east side of Church road. He also owns in fee the east half of that part of Church road upon which his lands front, subject to the easement of the public for highway purposes.     In 1867, in pursuance to an act of the legislature, a drainage ditch was cut through the ridge above described, thus forming an artificial outlet for a part of the water from Skokie swamp to Lake Michigan.     At the January term, 1870, of this court, the act of February, 1855, authorizing the drainage of wet lands in certain townships of Cook county and constituting certain persons therein named a body corporate by the name and style of "The Drainage Commissioners," by authority of which the ditch above described was constructed, was held unconstitutional.     (*Hessler* v. *Drainage Comrs.* 53 Ill. 105.) The ditch in question remained as originally constructed until the year 1883, when that portion of it which crosses Church road was re-constructed by the village of Gross Point by putting in a circular stone-and-brick culvert, four feet in diameter on the inside.     This culvert was put in to replace the original open ditch, and instead of the wooden bridge across the old ditch the new culvert was back-filled with dirt so as to dispense with the bridge.     No change was attempted to be made in this culvert from 1883 until 1904. In 1904 the village of Gross Point let a contract to Joseph Braun to replace the stone-and-brick culvert with a new arch concrete culvert, to be ten feet high and six feet from side to side, the arch above to be back-filled and Church road restored to its present condition.     The side walls of the new culvert were to be several feet lower than the bottom of the stone-and-brick culvert, and the culvert was to be left with a dirt bottom.     Braun's contract also provided that he should build retaining walls one hundred and seventy-five feet east and the same distance west of the culvert, with a six-foot space between them for the water to pass through.

It appears from the evidence that the bottom of the original ditch west of the culvert was considerably lower than the bottom of the stone-and-brick culvert.   In consequence of this condition water accumulated in the ditch west of the culvert, which remained there the greater part of the year. The purpose of the village in re-constructing the culvert was, in part, to rid the village of the nuisance resulting from the stagnant pool of water in the ditch west of the road. Appellee filed this bill upon the claim that the proposed re-construction of the culvert would increase the volume of water that would be brought upon his land, thus causing serious damage to his premises.

When this case was before us on the former appeal the law of the case was settled upon the facts stated in the bill and admitted by a motion to dissolve.   In disposing of the principal legal question raised on the former hearing, this court, on page 240, said: "Assuming the existence of the easement as now enjoyed, it is contended that the village authorities, in the discharge of statutory duties, may, in their discretion, enlarge the culvert and thus increase the burdens on the servient estates.   To this contention we cannot assent. The owner of an easement cannot materially increase the burden of it upon the servient estate.   (Jones on Easements, sec. 827.)   For the purpose of this decision it must be assumed that the proposed change in the culvert will increase the burdens upon the lands of appellant.   It is charged in the bill that such result will follow, and we think the facts stated support the charge."

After the bill had been held sufficient, on its face, to entitle appellee to the relief sought, the only question to be determined thereafter was whether the evidence introduced before the master sustained the bill.   The only question of fact which the appellants sought to controvert on the trial was whether the proposed improvement would increase the burdens upon appellee's land.   Upon this question appellants offered the testimony of engineers Randolph and Gree-

ley, both of whom testified that they had examined the plans and specifications for the proposed improvement and also the ditch and culvert as they now exist, and that in their opinion the proposed culvert would not materially increase the burdens upon appellee's land.    Mr. Randolph admits, however, that the new culvert has a capacity of 14.12 square feet while the old culvert only has a capacity of 12.56 square feet.    This witness also admits that there would be a slight tendency to erosion of the dirt bottom of the proposed culvert, which would slightly increase the capacity of the new culvert.    On behalf of appellee, engineers Winds and Orwig testified that a much larger quantity of water would pass through the proposed culvert in a given time than through the old one, and that by the erosion of the dirt bottom the proposed culvert would finally scour out until the bottom was brought to a level with Lake Michigan.    The trial court adopted the views expressed by engineers Winds and Orwig as being the most reasonable and probable.    In our opinion the trial court committed no error in this regard.    As the situation presents itself to us, it seems entirely reasonable that a large quantity of water running down this ditch, with a fall of one-half foot to the hundred feet, would necessarily cause erosion, not only in the bottom of the culvert but also on appellee's land below the culvert, thereby causing the banks to crumble away, thus increasing the burdens upon his estate, which, under the law, appellants have no right to do.

We do not deem it necessary to reconsider the legal questions that were discussed on the former hearing, although appellants have re-argued these questions in their brief.

The decree of the circuit court is free from error, and will be accordingly affirmed.    *Decree affirmed.*