ANN CATHERINE McGOEY, Plaintiff-Appellant, v. BETSY BRACE *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—08—2508

Opinion filed October 16, 2009.

Thomas J. Ramsdell and Anthony S. Hind, both of Ramsdell & Hind, of Chicago, for appellant.

Karl L. Felbinger, of Felbinger & Felbinger, of Northbrook, for appellees.

JUSTICE JOSEPH GORDON delivered the opinion of the court:

This case concerns a driveway and sidewalk easement upon the land of plaintiff Ann Catherine McGoey that the defendants, owners of the four adjacent properties, use for access to the nearby public road. McGoey alleges that this easement, which is located only a few feet from her home, causes severe flooding which at times has rendered her home uninhabitable. She therefore wishes to move the easement 70 feet to the east upon her land, which, she alleges, will not interfere with the use of the easement. However, the defendants have refused to consent to such a move.

McGoey thus brought the instant suit against the owners of the easement, seeking a judicial declaration that she was permitted to move the easement. The court granted defendant Betsy Brace's motion pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)) to dismiss. It found that, under the rule articulated in *Sullivan v. Bagby*, 335 Ill. 192, 195-96, 166 N.E. 449 (1929), no "substantial" change in an easement is permitted without the consent of all owners of the easement; it further found that McGoey's proposed change was substantial as a matter of law. McGoey now appeals. For the reasons that follow, we reverse and remand.

## I. BACKGROUND

In 1940, the owners of 929, 933, 935, 939, and 941 Tower Road, Winnetka, Illinois, entered into a written agreement giving them a driveway and sidewalk easement over 935 and 941 Tower Road for purposes of ingress and egress to and from the properties.[1] The properties have since been sold. McGoey, the plaintiff, currently owns 941 Tower Road. Defendant June Parmenter owns 929, defendant Betsy Brace owns 933, defendant Barbara Johnson owns 935, and defendants Melissa Mizel and Michael Edwards own 939.

---

[1]This easement is an "easement appurtenant," defined as an incorporeal right, short of actual ownership, over the land of another. *Waller v. Hildebrecht*, 295 Ill. 116, 122, 128 N.E. 807 (1920); *McCann v. R.W. Dunteman Co.*, 242 Ill. App. 3d 246, 254, 609 N.E.2d 1076, 1082 (1993). The tract of land (or tracts, in this case) benefited by the easement is known as the dominant estate, and the tract of land burdened by the easement is known as the servient estate. *McCann*, 242 Ill. App. 3d at 254, 609 N.E.2d at 1082. Thus, in the present case, McGoey is the owner of the servient estate, while defendants are owners of the dominant estates. Owners of dominant estates are also referred to as owners of the easement (see *Elser v. Village of Gross Point*, 240 Ill. 508, 511, 88 N.E. 1018 (1909)) or easement holders (see *Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90, 103, 807 N.E.2d 1054, 1064 (2004)).

In her first amended complaint, which frames the issues now before us, McGoey alleged that the location and size of the driveway contributes to poor storm water drainage on her property, which in turn causes frequent and severe flooding in her home. This flooding, she stated, causes rain water and raw sewage to intrude upon her downstairs bedroom, basement, and garage, rendering her home uninhabitable for reasons of health and safety. The flooding also fosters the growth of mold and has a negative effect on the structural integrity of her house. McGoey further alleged that relocating the driveway 70 feet to the east upon her property would help solve her flooding problems without having a negative impact upon the defendants' drainage, safety, or use and enjoyment of their properties. She proposed to move the driveway at her own expense and to leave the existing driveway in place until the new driveway was complete. Nevertheless, McGoey said, defendants refused to allow her to relocate the easement. She later clarified that, while three of the five defendants were amenable to the idea of relocation, the remaining defendants would not consent to such a change.

Therefore, McGoey sought an injunction barring defendants from refusing to permit the relocation of the easement. She additionally requested that the court "declare and adjudicate the rights and duties of Plaintiff and Defendants pursuant to the easement." In particular, she sought a declaration that she had the right to relocate the easement as long as the relocation would not significantly lessen the utility of the easement, increase the burdens upon the defendants as owners of the easement, or frustrate the purpose for which the easement was created.

Defendant Betsy Brace filed a section 2—615 motion to dismiss (735 ILCS 5/2—615 (West 2006)). The trial court granted her motion. It found that the controlling principle, stated by our supreme court in *Sullivan*, 335 Ill. at 195-96, was that no "substantial" change to an easement was permitted without the consent of all parties to that easement. The court then stated:

> "While it is conceivable that a relocation of the driveway could be so slight as to be *de minimis* and therefore not 'substantial' under the principals [sic] of *Sullivan*, we do not have such a case here. The current driveway crosses through plaintiff and Johnson's properties. Plaintiff and Johnson seek to move the easement across a significant area of the affected lots, to the east property line of each of their respective properties. Such a move is substantial by any definition and therefore requires the consent of all five property owners."

Therefore, the court found that McGoey had no right to relocate the driveway under the terms of the easement.[2]

McGoey timely filed the instant appeal.

## II. ANALYSIS

McGoey contends that the trial court erred in granting the motion to dismiss for two reasons, both of which are disputed by defendant Brace, the only defendant to have filed an appellate brief in this matter. First, McGoey contends that the rule articulated in *Sullivan* only applies where a change to an easement effects a change in the identity of the burdened party, and there is no such change under the facts as alleged in her complaint, since her estate will remain the servient estate even after the proposed relocation of the driveway. Second, she contends that even if the *Sullivan* standard applies, a servient owner's modification to an easement is not "substantial" under *Sullivan* unless it decreases the utility of the easement, increases the burdens on the owner of the easement in her use and enjoyment of the easement, or frustrates the purpose of the easement. Alternately, she argues, to the extent that the *Sullivan* standard is more rigid in its definition of substantiality, it should be abandoned in favor of a more flexible standard incorporating the above principles. Either way, according to her, the question of whether a proposed change to an easement compromises the rights of the easement holder is necessarily a fact-intensive issue which cannot properly be decided on the pleadings. We consider these contentions in turn.

A ruling on a section 2—615 motion to dismiss presents a question of law; accordingly, our review is *de novo*. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418-19, 775 N.E.2d 951, 961 (2002). Such a motion should only be granted where it appears that no set of facts can be proven under the pleadings that would entitle plaintiff to relief. *Zeitz v. Village of Glenview*, 227 Ill. App. 3d 891, 894-95, 592 N.E.2d 384, 387 (1992). In ruling upon a motion to dismiss, we consider all well-pleaded facts and all reasonable inferences that can fairly be drawn from those facts to be true. *Zeitz*, 227 Ill. App. 3d at 894, 592 N.E.2d at 387.

### A

■ The first point of contention between the parties is whether the *Sullivan* substantiality standard applies to the case at hand.

---

[2]McGoey's complaint also alleged that the driveway in its present form was eight feet wider than provided for in the easement agreement, and the court stated that she was entitled to seek injunctive relief on that basis. However, McGoey subsequently voluntarily dismissed that portion of her complaint and does not now raise it on appeal.

McGoey argues that this standard only applies to cases where a change in servitude effects a change in the identity of the burdened party. We disagree.

The language in *Sullivan* that the trial court relied on in issuing its decision is as follows:

> "An easement once definitely settled and located cannot be changed by either party without the consent of the other, where such change results in a substitution of a servitude different from that which previously existed. This rule is applicable both to the owner of the easement and to the owner of the fee. Though a slight or immaterial change is not in violation of the rights of the parties, substantial changes may not be made." *Sullivan*, 335 Ill. at 195-96.

McGoey contends that, based upon this language, consent of all parties to an easement is only required for changes that "result[ ] in a substitution of a servitude different from that which previously existed." She further contends that a substitution of servitude only occurs where there is a change in the identity of the burdened party. Since her proposed relocation will not cause such a change—the easement will remain on her land, and her land will remain the servient estate—she argues that the consent requirement of *Sullivan* is inapplicable. However, a full reading of *Sullivan* does not support McGoey's interpretation of this phrase.

The parties in *Sullivan* were farmers with adjacent tracts of land. *Sullivan*, 335 Ill. at 193. A water course flowed from defendant's land onto plaintiff's land, and by mutual consent, defendant maintained a tile drain across the property of both parties for the water to run through. *Sullivan*, 335 Ill. at 193-94. The court found that this drain constituted an easement, and it further found that defendant did not have the right to re-lay the tile on his own land in a way that disconnected his portion of the drain from plaintiff's portion of the drain, thus causing flooding on plaintiff's land. *Sullivan*, 335 Ill. at 194-96. In coming to this decision, the *Sullivan* court undertook no discussion of whether defendant's adjustment of the tile constituted "a substitution of a servitude different from that which previously existed." *Sullivan*, 335 Ill. at 195-96. Rather, the court based its decision on the fact that defendant "had no right to make any substantial change in the drain." *Sullivan*, 335 Ill. at 196. From this, we conclude that the *Sullivan* court did not intend for substitution of servitude to be the exclusive form of change requiring consent of all parties to an easement. Rather, *Sullivan* requires consent for all substantial changes, including, but not limited to, changes that effect a substitution of servitude. That is, a substitution of servitude is merely a subset of the broader category of substantial changes, not a precondition to the application of the substantiality test.

This reading is consistent with the way in which *Sullivan* has been interpreted in subsequent cases, which look to the substantiality of the change made to the easement but do not require as a separate precondition that the change effect a substitution of servitude. For instance, in *Bollweg v. Richard Marker Associates, Inc.*, 353 Ill. App. 3d 560, 573, 818 N.E.2d 873, 884 (2004), the court quotes the language from *Sullivan* that McGoey seeks to rely upon, but then proceeds to conduct a substantiality analysis even though no change has occurred in the identity of the burdened party. The *Bollweg* defendant had an easement on plaintiff's land for an agricultural drain tile that allowed rainwater to flow off defendant's land, through plaintiff's land, and then into a nearby stream. *Bollweg*, 353 Ill. App. 3d at 563, 818 N.E.2d at 877. Defendant subsequently removed most of the agricultural tile on its property and constructed a water retention pond, which he then hooked up to drain through plaintiff's tile. *Bollweg*, 353 Ill. App. 3d at 573, 818 N.E.2d at 884. Plaintiff alleged that this change caused excess water, silt, and debris to flow onto his property. *Bollweg*, 353 Ill. App. 3d at 563, 818 N.E.2d at 877. No substitution of servitude occurred under the definition given by McGoey, as plaintiff's property was the servient estate both before and after the changes that defendant made. Nevertheless, upon these allegations, the court cited *Sullivan* in reaching its conclusion that "defendant has materially altered the character of the easement" and that defendant therefore exceeded the scope of the existing easement in not obtaining consent for the change. *Bollweg*, 353 Ill. App. 3d at 573, 818 N.E.2d at 884.

Cases involving alterations to easements are consistently handled in this manner by Illinois courts, with the focus entirely on the substantiality of the proposed change. See, *e.g.*, *Professional Executive Center v. La Salle National Bank*, 211 Ill. App. 3d 368, 384, 570 N.E.2d 366, 376 (1991) (landowner who had an easement allowing him to maintain a septic field on defendant's land could not unilaterally make changes to the septic system where such change would change the contours of defendant's land and therefore impose an undue burden on defendant); *Vallas v. Johnson*, 72 Ill. App. 3d 281, 284, 390 N.E.2d 939, 942 (1979) (owners of servient estate could not unilaterally reduce the width of road easement from 19 feet to 12 feet where such reduction interfered with the ability of the owners of the dominant estate to navigate the easement); *Triplett v. Beuckman*, 40 Ill. App. 3d 379, 382, 352 N.E.2d 458, 461 (1976) (defendants could not replace bridge easement with causeway where it interfered with plaintiffs' use and enjoyment of their lake). Therefore, contrary to McGoey's contention, the *Sullivan* substantiality standard does apply to the proposed easement change in the instant case.

B

The next issue of contention between the parties is what it means for a modification to an easement to be "substantial" under the law of our supreme court and thus require the consent of all parties to the easement. McGoey argues that when an owner of a servient estate wishes to make a change to an easement on her property, that change is not substantial unless it harms the interests of the owner of the dominant estate; where no such harm results, as she has alleged in the current case, she contends that the servient owner should be allowed to make such changes unilaterally. She further argues that, if we should find that the *Sullivan* standard does not permit an inquiry into the detriment caused to the easement holder, we should abandon it in favor of the standard laid out in section 4.8(3) of the Restatement (Third) of Property (Restatement (Third) of Property §4.8(3) (2000)), which calls for such inquiry. Regardless, she contends that the substantiality of a proposed change to an easement is a question of fact which cannot properly be decided on the pleadings. Therefore, she urges us to reverse and remand for further proceedings.[3] Defendant Brace, for her part, argues that it is "obvious" under the undisputed facts that McGoey's proposed relocation of the driveway is a substantial one.

In granting defendant Brace's motion to dismiss, the trial court did not offer any definition of "substantiality." Furthermore, Brace, in arguing that we should affirm the decision of the trial court, does not attempt to offer any definition of "substantiality" either. However, it appears that both view "substantiality" as something inherent in the nature of the change without regard to how, if at all, the change impacts the dominant estate. Thus, the trial court stated that the proposed move is "across a significant area of the affected lots" and is therefore "substantial by any definition." Similarly, Brace in her brief points out the fact, undisputed in the record, that there is approximately 70 feet of McGoey's property to the east of the driveway and that the proposed move would leave approximately 0 feet to the east of the driveway. She then asserts that such a distance is obviously substantial on its face.

_____

[3]McGoey additionally argues that even if the trial court were correct in finding her proposed relocation of the easement to be substantial as a matter of law, the court should not simply have dismissed her complaint, but should have issued a declaration as to what manner of relocation would be insubstantial and therefore permissible under *Sullivan*. However, for reasons that shall be developed below, we do not reach this contention.

McGoey, on the other hand, contends that substantiality in Illinois is properly defined in terms of the impact that a given modification will have upon the ability of the other parties to the easement to use and enjoy their property. If a modification to an easement causes more than a *de minimis* loss in utility to the other parties, or changes the purpose or character of the easement, then it is substantial; if not, then not. She argues that under this standard, her proposed relocation is not substantial because, under the allegations contained in her complaint, which we accept as true for purposes of ruling upon a motion to dismiss (*Zeitz*, 227 Ill. App. 3d at 894, 592 N.E.2d at 387), the relocation will have no negative impact upon defendants' use and enjoyment of their properties, nor will it have any effect upon the purpose of the driveway as a means of entrance and exit from defendants' properties.

This view urged by McGoey is akin to the equity-based test laid out in section 4.8(3) of the Restatement (Third) of Property for when the owner of a servient estate may modify an easement on her property:

> "Unless expressly denied by the terms of an easement, as defined in §1.2, the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not
>> (a) significantly lessen the utility of the easement,
>> (b) increase the burdens on the owner of the easement in its use and enjoyment, or
>> (c) frustrate the purpose for which the easement was created." Restatement (Third) of Property §4.8(3), at 559 (2000).

Comment *f* explains the reasoning behind this standard:

> "This rule is designed to permit development of the servient estate to the extent it can be accomplished without unduly interfering with the legitimate interests of the easement holder. *** This rule is not reciprocal. It permits unilateral relocation only by the owner of the servient estate; it does not entitle the owner of the easement to relocate the easement. The reasons for the rule are that it will increase overall utility because it will increase the value of the servient estate without diminishing the value of the dominant estate and it will encourage the use of easements and lower their price by decreasing the risk the easements will unduly restrict future development of the servient estate. In addition, permitting the servient owner to change the location under the enumerated circumstances provides a fair trade-off for the vulnerability of the servient estate to increased use of the easement to accommodate changes in technology and development of the dominant

estate." Restatement (Third) of Property §4.8(3), Comment *f*, at 563 (2000).

This Restatement provision stands in contrast to the traditional rule at common law and the current majority position in the United States, which is to prohibit unilateral changes to an easement by either party to the easement. See, *e.g.*, *Sweezey v. Neel*, 179 Vt. 507, 517, 904 A.2d 1050, 1057-58 (2006) (declining to adopt Restatement approach in Vermont in place of traditional rule); *Wells v. Sanor*, 151 S.W.3d 819, 823 (Ky. App. 2004) (discussing the traditional rule and contrasting it with the rule provided in the Restatement). The general justification given by advocates of the traditional rule is that it " 'favors uniformity, stability, predictability and property rights.' " *Sweezey*, 179 Vt. at 517, 904 A.2d at 1058, quoting *MacMeekin v. Low Income Housing Institute, Inc.*, 111 Wash. App. 188, 205, 45 P.3d 570, 579 (2002).

However, a number of other states that have considered this issue have either adopted the Restatement provision or applied a similar test, allowing for relocation of easements under certain circumstances even where the owner of the dominant estate does not agree. Thus, for instance, the Court of Appeals of New York chose to adopt the Restatement standard, reasoning as follows:

> "Traditionally, reasons for denying *easement holders* the right to make changes in location are that 'treating the location as variable would depreciate the value of the servient estate, discourage its improvement, and incite litigation' [citation]. Those same policy reasons, however, do not justify denying a *landowner's* (or 'servient owner's') limited authority to move an unlocated right of way. Indeed, recognizing that authority likely increases the value of the servient estate, and encourages the landowner to make improvements. Moreover, because a landowner's authority to relocate a right of way without consent is limited—in that relocation may not impair the easement holder's rights—both parties have an incentive to resolve any dispute prior to relocation. The easement holder has an interest in influencing the landowner's choice of a new location, and the landowner will want to avoid the risk and cost of allowing [the] court to make an after-the-fact determination as to the propriety of the relocation.
>
> Recognition of a relocation right in landowners raises its own policy concerns: that landowners (whose purchase price reflected the existence of the easement) will receive a windfall, that easement holders may be rendered vulnerable to harassment by the landowner and that the settled expectations of the easement holder will be disrupted. [Citations.] We conclude, however, that these concerns are adequately addressed by the limitation that a

landowner may not unilaterally change a right of way if that change impairs enjoyment of the easement holder's rights." *Lewis v. Young,* 92 N.Y.2d 443, 451-52, 705 N.E.2d 649, 653, 682 N.Y.S.2d 657, 661 (1998).

See also, *e.g., M.P.M. Builders, LLC v. Dwyer,* 442 Mass. 87, 90-91, 809 N.E.2d 1053, 1057 (2004) (adopting Restatement standard in light of the fact that it "maximizes the over-all property utility by increasing the value of the servient estate without diminishing the value of the dominant estate; minimizes the cost associated with an easement by reducing the risk that the easement will prevent future beneficial development of the servient estate; and encourages the use of easements"); *Roaring Fork Club, L.P. v. St. Jude's Co.,* 36 P.3d 1229, 1237 (Colo. 2001) (adopting Restatement approach, reasoning that it "simply maximizes overall benefit by helping one party without hurting the other," and remanding case for the lower court to determine whether modification of ditch easement was in conformity with the standards articulated in that section); *Burkhart v. Lillehaug,* 2003 S.D. 62, ¶12, 664 N.W.2d 41, 43 (applying Restatement test to find that owners of servient estate were entitled to reshape a road easement on their property where the modification "provided access substantially similar to what the road did in its original configuration"); *Wells,* 151 S.W.3d at 823 (stating that Kentucky law "allows the owner of a servient estate to unilaterally modify or alter the location of a roadway easement so long as it does not change the beginning and ending points and does not result in a material inconvenience to the rights of the dominant estate"); *Lewis,* 92 N.Y.2d at 452, 705 N.E.2d at 653-54, 682 N.Y.S.2d at 661-62 (adopting tentative draft of section 4.8(3) to allow owner of servient estate to unilaterally relocate easement where the location of the easement was not firmly fixed by deed); *R&S Investments v. Auto Auctions, Ltd.,* 15 Neb. App. 267, 278-79, 725 N.W.2d 871, 880-81 (2006) (applying Restatement test to find that owner of servient estate was entitled to modify sewage easement on his property in the absence of any evidence in the record that the modification would lessen the easement's utility or impair easement holder's use and enjoyment of the easement).

Although section 4.8(3) of the Restatement has not been explicitly adopted in Illinois, and the *Sullivan* decision itself provides no detailed definition of "substantiality," the principles animating the Restatement standard are reflected in the case law cited by the *Sullivan* court in reaching its decision, as well as in our subsequent case law interpreting *Sullivan.* Thus, we find that the substantiality standard of *Sullivan* is more consistent with the Restatement approach than the traditional common law view, insofar as substantiality is measured

in terms of the effect that the change will have upon the rights of the other parties to the easement.

Such a rule appears to be the thrust of our supreme court's decision in *Elser*, 240 Ill. 508, 88 N.E. 1018, which the *Sullivan* court cites with approval in concluding that substantial changes may not be made to an easement without mutual consent. *Sullivan*, 335 Ill. at 196. In *Elser*, the Village of Gross Point had an easement for a drainage culvert across plaintiff's land. When the village made plans to replace the existing culvert with a larger culvert which would process a larger quantity of water, plaintiff brought suit to enjoin the change, alleging that it would increase the volume of water that would be brought upon his land and therefore cause serious damage to his premises. *Elser*, 240 Ill. at 510-11. On appeal, the court found that the trial court erred in dismissing plaintiff's complaint:

> " 'Assuming the existence of the easement as now enjoyed, it is contended that the village authorities, in the discharge of statutory duties, may, in their discretion, enlarge the culvert, and thus increase the burdens on the servient estates. To this contention we cannot assent. The owner of an easement cannot materially increase the burden of it upon the servient estate.' " *Elser*, 240 Ill. at 511, quoting *Elser v. Village of Gross Point*, 223 Ill. 230, 240, 79 N.E. 27, 30 (1906).

Thus, the court reversed and remanded for trial on whether the proposed improvement to the culvert would increase the burden upon plaintiff's land. *Elser*, 240 Ill. at 511. Both sides presented evidence on the matter; the trial court concluded that plaintiff's witnesses were more credible and their conclusion more probable and therefore enjoined the village from making the proposed change. *Elser*, 240 Ill. at 512. Our supreme court found this conclusion to be reasonable based on the evidence presented and affirmed. *Elser*, 240 Ill. at 512.

This same approach is reflected in the appellate court decisions in *Triplett*, 40 Ill. App. 3d at 382, 352 N.E.2d at 461, *Professional Executive Center*, 211 Ill. App. 3d at 384, 570 N.E.2d at 376, and *Vallas*, 72 Ill. App. 3d at 284, 390 N.E.2d at 942. In each of these cases, the court, in applying the *Sullivan* substantiality test, looked to determine whether the defendant's modification of the easement negatively impacted the plaintiff's use and enjoyment of her property. Although *Triplett* and *Professional Executive Center* both deal with changes to an easement made by the owner of the dominant estate, the same principles apply to changes made by the owner of the servient estate. Indeed, the standards imposed on the owners of dominant estates for modifying an easement would, if anything, be stricter than those imposed on the owners of servient estates, because, as articulated in

comment *f* of section 4.8(3) of the Restatement, fully quoted above, the rule limiting the right to make unilateral changes in an easement is designed to avoid unduly restricting the development of the servient estate, the owner of which would otherwise be more susceptible to being impeded in the use and enjoyment of her property because the easement is located on her property. Restatement (Third) of Property §4.8(3), Comment *f* (2000). In any event, in applying the substantiality test in either case, the court does not look to whether the change is substantial in its own right, but rather to the way in which the correlative estate is burdened by that change.

Thus, in *Triplett*, plaintiffs were owners of a lake; defendants were owners of an island in the middle of the lake, and they had an easement granting them access to the island by way of a bridge extending over plaintiffs' lake. *Triplett*, 40 Ill. App. 3d at 380, 352 N.E.2d at 459. The bridge fell into disrepair, and defendants, without obtaining the consent of plaintiffs, removed the bridge and built an asphalt causeway in its place. *Triplett*, 40 Ill. App. 3d at 380, 352 N.E.2d at 459. According to plaintiffs, this had a negative impact on their recreational use of the lake, because they were unable to boat or water-ski under it as they had done with the bridge. *Triplett*, 40 Ill. App. 3d at 380, 352 N.E.2d at 459. The court cited *Sullivan* in support of its finding that, under these facts, that defendants should be required to remove the causeway and reconstruct the bridge:

> "[O]nce the point or place at which, or line along which, an easement is to be exercised is fixed, whether by express grant or otherwise by agreement or acquiescence, neither of the parties can change such location without the consent of the other. [Citations.] Moreover, although the owner of the dominant estate has the duty to maintain and repair the easement, he cannot make a material alteration in the character of the easement, even though it be more to his convenience to do so, if the alteration places a greater burden upon the servient estate or interferes with the use and enjoyment of the servient estate by its owner." *Triplett*, 40 Ill. App. 3d at 382, 352 N.E.2d at 461, citing *Sullivan*, 335 Ill. at 195-96, 166 N.E. at 450.

Thus, because the causeway prevented plaintiffs from being able to use and enjoy that portion of the lake which was previously accessible under the bridge, the court found that defendants were not entitled to make such a change in the easement without plaintiffs' consent. *Triplett*, 40 Ill. App. 3d at 382, 352 N.E.2d at 461.

Similarly, in *Professional Executive Center*, 211 Ill. App. 3d at 384, 570 N.E.2d at 376, the plaintiff landowner had an easement that allowed him to maintain a septic field on defendant's land, and he sought

to make certain improvements to the septic system to increase its functionality. However, testimony at trial indicated that these improvements could possibly pose a risk to the foundation of a building on defendant's property and would also cause a depression along a 100-foot stretch of defendant's land, which defendant testified could affect his property value and his use and enjoyment of his land. *Professional Executive Center*, 211 Ill. App. 3d at 384, 570 N.E.2d at 376. Under these facts, the court found that the plaintiff was not entitled to unilaterally make his proposed improvements, citing *Triplett* for the proposition that "Illinois authority provides that these changes can only be allowed where they do not impose an undue burden on the servient estate." *Professional Executive Center*, 211 Ill. App. 3d at 384, 570 N.E.2d at 376. See also *Vallas*, 72 Ill. App. 3d at 284, 390 N.E.2d at 942 (owners of servient estate could not unilaterally reduce the width of road easement from 19 feet to 12 feet, because such a change would interfere with the dominant estate owners' ability to navigate the easement).

■ We therefore find that pursuant to the above-cited Illinois precedent, substantiality in cases like the present one, in which the owner of a servient estate wishes to modify an easement upon her property, is properly measured in terms of harm to the owners of the dominant estate or estates, particularly in light of the policy concerns favoring such a standard, as discussed above. See *Lewis*, 92 N.Y.2d at 451-52, 705 N.E.2d at 653, 682 N.Y.S.2d at 661 (allowing owner of servient estate to make unilateral changes that do not impair easement holder's rights is beneficial because it helps encourage valuable improvements to servient estates without causing detriment to easement holders); Restatement (Third) of Property §4.8(3), Comment *f* (2000).

■ Under this standard, we find that the trial court erred in dismissing plaintiff's complaint. A defendant's section 2—615 motion to dismiss should only be granted where it appears that no set of facts can be proven under the pleadings that would entitle plaintiff to relief. *Zeitz*, 227 Ill. App. 3d at 894-95, 592 N.E.2d at 387; *Krueger v. Lewis*, 342 Ill. App. 3d 467, 470, 794 N.E.2d 970, 972 (2003). Moreover, a pleader is not required to set out her evidence in her complaint; she need only allege the ultimate facts to be proved. *Krueger*, 342 Ill. App. 3d at 470, 794 N.E.2d at 972. In the present case, plaintiff has alleged those ultimate facts through her contention that defendants will not be negatively impacted in the use and enjoyment of their properties as a result of her proposed relocation of the easement. It remains to be seen whether plaintiff's allegations will be borne out by the evidence. However, if they are, then, pursuant to the *Sullivan* substantiality

standard as discussed above, she would be entitled to her requested relief—namely, a declaration that she has the right to move the easement upon her property in the manner described in her complaint. Nor can the court determine substantiality simply on the basis of the distance that the plaintiff proposed to move the driveway, namely, 70 feet, since distance and the magnitude of the change do not establish substantiality by themselves; rather, it must also be established that such a move would have a negative impact upon the defendants. This would require factual determinations that could be tested at trial, or, at the very least, a fact motion. See *Professional Executive Center*, 211 Ill. App. 3d at 379, 570 N.E.2d at 373 (issue of whether a particular use of an easement is reasonable "is a question of fact to be determined from the facts and conditions prevailing"); see also *Elser*, 223 Ill. at 240 (remanding case for evidentiary hearing on whether proposed culvert expansion would have a negative effect on plaintiff's property).

Thus, for the foregoing reasons, we reverse the trial court's grant of defendant Brace's motion to dismiss, and we remand for trial to determine whether McGoey's proposed easement relocation is "substantial" under *Sullivan*.

Reversed and remanded for proceedings not inconsistent with this opinion.

McBRIDE and R.E. GORDON, JJ., concur.

