# Illinois Official Reports

## Appellate Court

***527 S. Clinton, LLC v. Westloop Equities, LLC*, 2014 IL App (1st) 131401**

| | |
|---|---|
| Appellate Court Caption | 527 S. CLINTON, LLC, Plaintiff-Appellee, v. WESTLOOP EQUITIES, LLC, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-13-1401 |
| Filed<br>Rehearing denied | March 10, 2014<br>April 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly entered summary judgment for plaintiff, finding that the defendant's easement for the use of parking spaces on plaintiff's adjoining property terminated when the hotel on defendant's property filed for bankruptcy and ceased operations for several years, since the record showed that both properties were owned by the same person until that person sold the hotel property to defendant's predecessor in title and granted the purchaser the parking easement on the adjacent parcel, he included the condition that the easement would terminate immediately and without further notice if there was any lapse in the operation of the hotel business, except for a temporary interruption due to a fire or other casualty, and in plaintiff's case, the cessation of operations did not constitute a mere temporary interruption, but rather it terminated the easement and absolved plaintiff of any liability for violating defendant's right to use the easement when plaintiff decided to build a multistory commercial and residential building on that parcel. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CH-12339; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |

Counsel on Appeal

Robert A. Egan, of Robert A. Egan, P.C., of Chicago, for appellant.

Kevin M. Forde and Joanne R. Driscoll, both of Forde Law Offices, LLP, of Chicago, for appellee.

Panel

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Cunningham concurred in the judgment and opinion.

## OPINION

¶ 1        The defendant, Westloop Equities, LLC, appeals the circuit court order granting summary judgment in favor of the plaintiff, 527 S. Clinton, LLC, on both counts of the plaintiff's second amended complaint which sought judicial declarations that its proposed development of a multistory commercial and residential building would not violate an easement held by the defendant. The defendant also argues the circuit court erred in refusing to modify a discovery order entered in the matter. For the reasons that follow, we affirm in part and reverse in part.

¶ 2        This is the second time the parties' easement dispute has been before us, and we summarize the basic facts and procedural background of the case from our previous opinion. See *527 S. Clinton, LLC v. Westloop Equities, LLC*, 403 Ill. App. 3d 42 (2010). The plaintiff is the owner of a parcel of real estate commonly known as 519-527 South Clinton Street in Chicago, Illinois (hereinafter, the Clinton Property); the Clinton Property is used as an open-air parking lot. *Id.* at 44. The defendant owns and operates a hotel upon a parcel of real estate adjacent to the plaintiff's property and is commonly known as 506 West Harrison Street (hereinafter, the Hotel Property). *Id.*

¶ 3        Both properties were under common ownership until October 1984, when the Hotel Property was sold to the defendant's predecessor-in-interest. *Id.* As part of the transaction, the defendant's predecessor-in-interest was granted an easement for (1) ingress and egress to or from the Hotel Property (the dominant estate) through or across the Clinton Property (the servient estate), and (2) for free parking. *Id.* The easement provided, in relevant part, as follows:

>        "1. All persons, by motor vehicle or otherwise, shall have the rights to ingress and egress in perpetuity to or from the property through and/or across the parking facility property, which rights shall not be terminable for any reason.
>
>        2. Grantee's registered guests of the hotel and banquet invitees shall have the right to park on the parking facility property at no cost.
>
>        3. Patrons of the bar and restaurant inside the subject hotel property shall have the right to park at no cost for a maximum of three (3) hours.

4. The easement for parking in the above Paragraphs 2 and 3 shall be subject to the following terms and conditions, a violation of which shall cause said easement to terminate immediately upon the violation:

(a) The easement will remain in force so long as the property is operated as a hotel. Ceasing to operate the subject hotel as a hotel business shall cause this easement to terminate immediately and without notice.

* * *

(d) The easement will remain in force and effect so long as the subject hotel is continuously and uninterruptedly operated as a hotel. Any lapse in the operation of the subject hotel property as a hotel business shall cause said easement to terminate immediately and without further notice; provided however, that temporary interruption in the operation of the subject hotel as a hotel due to fire or other casualty or damage or due to any comparable temporary interruption shall not be deemed a discontinuation or interruption under this subparagraph and shall not cause said easement to terminate. Termination of said easement under this subparagraph shall not solely apply to the period of inoperation, but shall be a definite and final termination of said easement.

5. In the event the above easement terminates in accordance with Paragraph 4 above, Grantee shall nevertheless have the ability to use such parking facilities on the same terms and conditions as applicable to any general public user thereof or as otherwise agreed upon in writing by Grantee and Grantor; including, but not limited to, Grantee's right to purchase from Grantor or its lessee the use of such number of parking spaces as Grantee, in its sole discretion, desires."

¶ 4    Over time, the hotel fell into disuse and closed. *Id.* at 45. In June of 1998, the defendant purchased the Hotel Property, refurbished the hotel, and reopened it in 1999. *Id.*

¶ 5    In October of 2006, the plaintiff purchased the Clinton Property and, thereafter, sought to develop the property and build a multistory commercial and residential building consisting of 276 residential units, as well as ground-floor retail shops and parking. *Id.*

¶ 6    On March 6, 2007, the plaintiff's representatives met with the manager of the hotel to discuss the proposed development. *Id.* In a letter dated March 23, 2007, the defendant's attorney expressed his opinion that the erection of a building on the plaintiff's Clinton Property would interfere with the defendant's easement and threatened immediate litigation. *Id.* On May 8, 2007, the plaintiff filed a three-count complaint against the defendant, seeking judicial declarations that the defendant's "free parking" easement ended in 1986 (count I) and that the proposed property development would not violate the defendant's "ingress-egress" easement (count II), and seeking a mandatory injunction compelling the removal of a parking ramp allegedly encroaching on its property by approximately 50 feet (count III). *Id.* at 45-46.

¶ 7    The circuit court dismissed count III, finding it was time barred under section 13-101 of the Code of Civil Procedure (Code) (735 ILCS 5/13-101 (West 2006)), and count I, finding it was time barred under both section 13-101 and section 13-102 of the Code (735 ILCS 5/13-102 (West 2006)). *527 S. Clinton*, 403 Ill. App. 3d at 46-47. Count II proceeded to a bench trial and ended in the defendant's favor when the circuit court granted its motion for a directed finding. *Id.* at 48. The plaintiff appealed to this court, and we reversed and remanded the matter to the circuit court for further proceedings. *Id.* at 55.

¶ 8       In our decision, we determined that: (1) section 13-101 of the Code, which contains a limitations period for adverse possession, did not apply to count I or III because there was no evidence that the defendant's use of the plaintiff's property was hostile or adverse (*id.* at 49, 52); (2) section 13-102 of the Code, which contains a limitations period for the recovery of land based upon the breach of a condition subsequent, did not apply to count I where the easement did not contain a condition subsequent (*id.* at 51); and (3) the circuit court erred in granting the defendant's motion for a directed finding where the plaintiff presented a *prima facie* case that it had the legal right to modify the ingress-egress easement (*id.* at 55).

¶ 9       On July 6, 2011, after the case was reinstated, the plaintiff filed its second amended complaint, which alleged additional facts and sought judicial declarations in two counts. The plaintiff alleged that, while its appeal was pending in 2010, its architect redesigned the proposed development. The new plan (hereinafter, the 2010 plan) still consisted of a 33-story, 276-unit residential apartment building, but it retained the ground-level parking lot contained on the Clinton Property. The plan included a paved driveway which, according to the plaintiff, provided "nearly identical rights of ingress and egress and access as those presently utilized by the Defendant, including identical access to Defendant's garage door to its underground garage." The plaintiff further alleged that a ramp connecting the Clinton Property and the Hotel Property at their northern borders would be maintained for use by the defendant.

¶ 10      The plaintiff attached to its complaint the following documents: the plat of survey describing the Clinton Property; the easement agreement containing the language quoted herein; the 2007 proposed development plan; and the 2010 plan.

¶ 11      Count I sought a declaratory judgment, pursuant to section 2-701 of the Code (735 ILCS 5/2-701 (West 2010)), that the defendant's free parking rights under the easement terminated when the hotel ceased operating as a hotel in 1988.

¶ 12      Count II sought another judicial declaration, pursuant to section 2-701, that the 2010 plan did not violate the defendant's reasonable ingress-egress easement rights.

¶ 13      On December 29, 2011, as to count I of the second amended complaint, the plaintiff filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2010)). The plaintiff argued that it was entitled to judgment in its favor, as a matter of law, because there was no genuine issue of material fact regarding (1) the uninterrupted cessation of hotel operations on the Hotel Property between 1988 and 1999, and (2) the unambiguous easement language providing for termination of the free parking easement in the event the Hotel Property ceases to operate as a hotel.

¶ 14      In support of its argument, the plaintiff attached the affidavit of Lewis Spector, who attested to the fact the hotel closed in the late 1980s and did not reopen until 1999. Spector, whose father owned both the Hotel and Clinton Properties until 1984, managed the parking lot on the Clinton Property from 1992 until 2006 and was familiar with the relationship between the owners of the two properties. According to Spector, after the hotel reopened in 1999, the parking lot operators "had a handshake agreement with Leslie Barnard [managing member of the defendant] regarding parking," which provided that the defendant could use 16 spaces on the Clinton Property at no charge and the plaintiff's parking lot operators could park cars along the lower-level western wall of the hotel. He stated that the "agreement was terminated after approximately one year," and thereafter, hotel guests and patrons had to pay to park on the Clinton Property.

¶ 15     The plaintiff also attached the affidavit of Anthony Christopher, who managed the Hotel Property from 1986 until the hotel closed in 1988. Christopher stated the hotel closed because revenues were insufficient to sustain the business and not because of any casualty or mechanical failures. He confirmed that the pipes had burst at one point in time, but that occurred only after the hotel closed and the heat had been turned off. Additionally, Leslie Barnard, the managing member of the defendant, admitted in his deposition that the hotel was not operating when the defendant purchased the property in 1997 or 1998. He testified that he had been told the hotel had been closed for 8 to 10 years before the defendant's purchase of the Hotel Property.

¶ 16     In response, the defendant argued that the plaintiff was barred from claiming the free parking easement terminated because the automatic stay provision of the Bankruptcy Code (11 U.S.C. § 362 (2006)) applied to the defendant's predecessor-in-interest's 1988 bankruptcy. According to the defendant, when its predecessor-in-interest (Equity Hotel) filed bankruptcy in 1988, the automatic stay provision applied, barring the reversion of the easement to the plaintiff, and the plaintiff failed to apply for a modification of the automatic stay in the bankruptcy court. The defendant further argued that the plaintiff's claims were barred by the doctrines of waiver, equitable estoppel and *laches*.

¶ 17     On February 15, 2012, the defendant filed a motion to compel the plaintiff to produce an unredacted real estate contract. According to the defendant, the plaintiff had recently entered into a contract to sell the Clinton Property, but produced a redacted version of the contract concealing the closing date and sale price. The plaintiff claimed such information was irrelevant to the proceedings at bar. On March 2, the circuit court ordered the plaintiff to produce a copy of the unredacted contract to the court and to defense counsel, but it prohibited counsel from disclosing the sale price or closing date to his client or any third party.

¶ 18     On March 20, 2012, the circuit court granted the plaintiff summary judgment as to count I (free parking claim) of the second amended complaint. In rejecting the defendant's argument under the automatic stay provision of the Bankruptcy Code, the court noted that, under the plain language of the easement and this court's prior decision, the plaintiff was not required to perform any subsequent action in order for the easement to terminate. The court specifically relied on this court's statement that the "easement does not contain a condition subsequent" (*527 S. Clinton*, 403 Ill. App. 3d at 51) in its determination that the plaintiff was not required to seek a modification of the automatic stay provision in the bankruptcy court to cause the easement to terminate. The circuit court further stated that, even in absence of our earlier decision, the language of the easement unambiguously provided that it would terminate, without any action by the plaintiff, when the Hotel Property ceased to operate as a hotel. Regardless, the court noted that Equity Hotel's bankruptcy had ended by the time the defendant purchased the property and therefore the automatic stay provision was no longer in force.

¶ 19     The circuit court further rejected the defendant's remaining arguments. Regarding waiver, the circuit court determined that, based on Spector's affidavit, the parties conducted themselves in a manner which indicated the easement had terminated. The court found that Spector and the defendant would not have needed a "handshake agreement" regarding parking had the easement still been in force. Accordingly, the court rejected the defendant's argument that the plaintiff waived its right to assert the termination of the easement when it agreed to provide free parking on the Clinton Property in 1999. The court further rejected the

defendant's equitable estoppel and *laches* arguments, stating that each depended upon the argument that neither the plaintiff nor its predecessor gave any notice of the termination of the easement and notice was not required under the terms of the easement.

¶ 20　　On April 17, 2012, the defendant sought a modification of the court's previous order prohibiting counsel from disclosing the sale price and closing date of the plaintiff's pending real estate contract. The defendant claimed that the information was necessary to develop a mootness defense. The court denied this motion in an order dated October 10, 2012, stating that the publication of the confidential terms was unnecessary to raise a mootness defense. Further, the court stated that the pending sale of the Clinton Property did not render the easement issue moot because the sales contract provided that the plaintiff convey title free and clear of the current litigation, meaning the issues in the case had to be decided regardless of the pending sale.

¶ 21　　On June 8, 2012, the plaintiff moved for summary judgment as to count II (ingress-egress claim) of the second amended complaint, arguing that the undisputed facts demonstrated that the 2010 plan would not interfere with the defendant's ingress-egress rights under the easement. In support, the plaintiff attached the affidavit of James Plunkard, the architect who created the 2010 plan. According to Plunkard, the 2010 plan allowed for continued ingress and egress from the Hotel Property to the Clinton Property in substantially the same manner as currently exists. He further stated in his affidavit that the 2010 plan continued to provide access from the Hotel Property's upper driveway to its underground parking and service entrance and access to the Hotel's nine-foot strip of property to the west of its western wall, where its electrical room is located.

¶ 22　　In response, the defendant submitted the affidavit of James Ricci, an employee of the company which manages the hotel on the Hotel Property. Ricci stated that there is a nine-foot strip of alley space adjacent to the west of the hotel containing parking spaces used by the hotel. He stated that "if a building is built next door, on or close to the property line, we would be unable to park vehicles in that area" and "ingress and egress would be blocked by the light stanchions that are placed in that area." Ricci further stated that if a building was built close to the property line of the Clinton Property, the garbage disposal service trucks would be unable to access the dumpsters in that area. Adrienne Davis, an employee of the hotel, stated in her affidavit that "if a building is built on the [Clinton Property], we would not be able to park vehicles in those areas [the nine-foot alley] because we need to traverse the parking lot of the adjacent property to get to those parking spaces."

¶ 23　　The defendant also included the affidavit of Sherwin Braun, an architect who reviewed the 2010 plan. Braun concluded that, based upon the proposed plan documents, the existing ramp that the hotel uses would have to be removed and temporarily relocated, possibly requiring reconfiguration of the current traffic used by the hotel and parking lot properties. He opined that the ramp could eventually be rebuilt in its present location. Braun further stated that "[i]t [was] [his] opinion that the high rise residential building could be built without significant disturbance to the use of the easement," but significant disruption to the hotel's ingress and egress would occur during the construction of the new complex, which would likely take two years to complete. According to Braun, "with the present condition of the 9[-foot strip] adjacent to the western elevation of the hotel, the hotel would lose substantial parking and parking revenue."

¶ 24     On January 10, 2013, the circuit court granted the plaintiff summary judgment as to count II of the second amended complaint. The court determined that the evidence established that the 2010 plan did not interfere with the defendant's ingress-egress rights and that the defendant's evidence was merely speculative.

¶ 25     On March 5, 2013, the circuit court denied the defendant's motion to reconsider its ruling as to count II. This appeal followed.

¶ 26     Summary judgment is a drastic means of disposing litigation and therefore should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010); *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 185-86 (2002). "The purpose of a summary judgment proceeding is not to try an issue of fact, but to determine whether any genuine issue of material fact exists." *Id.* at 186. When considering a motion for summary judgment, we construe the facts strictly against the moving party and in the light most favorable to the nonmoving party. *Id.* Our review of a circuit court order granting summary judgment is *de novo*. *Id.* at 185.

¶ 27     On appeal, the defendant first argues that the court erred in granting summary judgment in favor of the plaintiff as to the free parking claim in count I, because the court improperly concluded that the automatic stay provision of the Bankruptcy Code and the doctrines of waiver, *laches*, and estoppel did not apply in this case. The defendant further argues the plaintiff lacks standing to argue that the easement terminated and that the court erred when it determined that the cessation of hotel operations was not temporary. In construing the plain language of the easement, we agree with the circuit court that the free parking easement terminated when the Hotel Property ceased operating as a hotel between 1988 and 1999.

¶ 28     A grant of an easement is construed using the same rules applied to deeds and other written instruments or agreements. *Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90, 101 (2004). "Generally, an instrument creating an easement is construed in accordance with the intention of the parties, which is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction, including the state of the thing conveyed and the objective to be obtained." *River's Edge Homeowners' Ass'n v. City of Naperville*, 353 Ill. App. 3d 874, 878 (2004). "Courts tend to strictly construe easement agreements so as to permit the greatest possible use of property by its owner." *Duresa*, 348 Ill. App. 3d at 101. If the language of the agreement is facially unambiguous, then the circuit court interprets the contract as a matter of law without the use of extrinsic evidence. *River's Edge*, 353 Ill. App. 3d at 878. Whether an agreement is ambiguous and requires parol evidence is a question of law, subject to *de novo* review. *Id.*

¶ 29     Here, the language of the agreement granting the easement is unambiguous. The agreement unequivocally provided that the "easement will remain in force and effect so long as the property is operated as a hotel," and that "[c]easing to operate the subject hotel as a hotel business shall cause this easement to terminate immediately and without notice." Section 4(d) of the easement further stated that the easement would remain in force so long as the hotel "continuously and uninterruptedly operated as a hotel" and that "[a]ny lapse in the operation *** as a hotel business shall cause [the] easement to terminate immediately and without further notice," except in instances of a temporary interruption, such as one due to a fire or a similar casualty. Moreover, the agreement provided that the termination of the easement due to a nontemporary business interruption would be "a definite and final termination of [the]

easement." Thus, the language of the agreement unambiguously provided that the easement terminates upon the nontemporary interruption of hotel operations and no action by any party is required to effectuate the termination. As the circuit court duly noted in its decision, we so determined in our earlier decision that no action by any party was required to effectuate the termination. See *527 S. Clinton*, 403 Ill. App. 3d at 50-51 (finding that the instrument provided that the easement would automatically terminate without any action by the plaintiff).

¶ 30     It is undisputed in this case that the Hotel Property ceased operating as a hotel between 1988 and 1999 and, contrary to the defendant's argument, the cessation of hotel operations for more than a decade due to a bankruptcy does not constitute a "temporary" interruption as contemplated by the agreement. While the defendant argues the question of a "temporary" interruption is one of fact, "the mere allegation that a material fact exists does not create such an issue or avoid the imposition of summary judgment" (*Douglas Theater Corp. v. Chicago Title & Trust Co.*, 210 Ill. App. 3d 301, 309 (1991)). As stated, the interpretation of the instrument granting the easement is a question of law when the terms are clear and unambiguous, and an ambiguity is not created simply because the two parties cannot agree. *Id.* Rather, "[a]n ambiguity occurs only when the language is reasonably susceptible to more than one meaning." *Id.* The language of section 4(d), which likens a "temporary interruption" as one "due to a fire or other casualty or damage or due to any comparable temporary interruption," cannot reasonably be construed to include a decade-long interruption due to an owner's bankruptcy, as such a closure is not comparable to a temporary one caused by a fire or similar casualty. Accordingly, we affirm the judgment of the circuit court, which granted summary judgment as to count I of the second amended complaint in favor of the plaintiff.

¶ 31     We also reject the defendant's remaining arguments. First, the automatic stay provision of the Bankruptcy Code did not apply to the termination of the easement provision for two reasons: (1) the plaintiff's action did not involve any property owned by the debtor (see 11 U.S.C. § 362(a) (no section applies to easement rights)); and (2) the bankruptcy of the defendant's predecessor-in-interest had ended by the time the defendant purchased the property and, therefore, the property was no longer part of any bankruptcy estate (see 11 U.S.C. § 362(c) (2006)).

¶ 32     Second, we reject the defendant's argument that the plaintiff waived its right to raise the termination provision of the free parking easement agreement when it continued to provide free parking under the "handshake agreement." The undisputed evidence showed that the parties conducted themselves as if the easement had terminated; namely, Spector testified that he and the hotel parking operators had a short-lived "handshake" agreement when the hotel first reopened in 1999 in which the hotel could use 16 parking spaces for free in exchange for the plaintiff's use of the spaces along the hotel's western wall. As the circuit court noted, there was no evidence that the defendant demanded free parking from the plaintiff by virtue of the easement. Had the defendant exercised its right under the easement and the plaintiff granted its request, thereby exhibiting a voluntary relinquishment of a known right, there may have been a question of fact regarding whether the plaintiff waived its right to assert that the easement had terminated. See *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 66 (defining "waiver" as the voluntary relinquishment of a known right and stating it arises from an affirmative, consensual act consisting of an intentional relinquishment of a known right). However, there is no evidence in the record that the defendant ever demanded free parking under the easement after it purchased the Hotel Property.

¶ 33        Third, the defendant argues that the doctrine of *laches* applies where it knew of and relied upon the easement agreement when it purchased the hotel and expended $10 million renovating it and where the plaintiff neglected to assert its right in a timely fashion. The evidence does not support the defendant's argument as the plaintiff filed suit in May 2007, shortly after its purchase of the Clinton Property in October 2006. Further, there is no evidence contained in the record demonstrating that the defendant purchased the Hotel Property in 1999 in reliance upon the easement agreement. See *McDunn v. Williams*, 156 Ill. 2d 288, 330-31 (1993) (noting that two elements are necessary to a finding of *laches*: "(1) lack of diligence by the party asserting the claim and (2) prejudice to the opposing party resulting from the delay" (internal quotation marks omitted)). In fact, despite Barnard's testimony that he relied upon the easement terms when he purchased the Hotel Property, he admitted that he knew no hotel had operated on the property for 8 to 10 years before his purchase. Barnard also never testified as to demanding free parking from the plaintiff under the easement, and Spector testified that, in fact, there was a handshake agreement regarding free parking with Barnard for approximately one year. Thus, the defendant could not have relied upon the easement when, based on its plain language, the free parking easement terminated before the purchase of the Hotel Property and where it never demanded free parking under the easement after its purchase.

¶ 34        Fourth, we reject the defendant's argument that the plaintiff, because it knew of the easement agreement's existence when it purchased the Clinton Property in 2007, was estopped from raising the termination provision. The plaintiff attached to its motions for summary judgment the opinion letters, predating the closing on the Clinton Property, of two attorneys, who opined that the free parking easement had terminated long before 2007. Thus, the record establishes that the plaintiff purchased the property knowing that it was subject only to the terms of the easement agreement that were still in force. The plaintiff in this case is not denying the existence of the easement (see *Curt Bullock Builders, Inc. v. H.S.S. Development, Inc.*, 225 Ill. App. 3d 9, 15 (1992) (finding party estopped from denying existence of easement where party knew of its existence, its use by the other party, and benefitted therefrom)), but only the seeking a judicial declaration as to its terms. Thus, the doctrine of estoppel does not apply to the facts presented here.

¶ 35        The defendant's argument that the plaintiff lacks standing to assert the automatic termination provision in the agreement also fails because easement rights pass to and are binding upon all subsequent grantees of the land, such as the plaintiff in this case. See *Flower v. Valentine*, 135 Ill. App. 3d 1034, 1039 (1985) ("The right created by such easement will pass respectively to and be binding on all subsequent grantees of the respective tracts of land."). Thus, after purchasing the Clinton Property, the plaintiff had standing to seek a judicial declaration that the free parking easement had terminated and was not binding upon it.

¶ 36        Next, the defendant argues that the court erred in granting summary judgment as to count II (ingress-egress claim) because there was a genuine issue of material fact as to whether the plaintiff's 2010 plan interfered with its ingress-egress rights under the easement agreement. On this point, we agree with the defendant.

¶ 37        Whether a party should be allowed to proceed with a proposed change to an easement requires a consideration of the substantiality of the change. *McGoey v. Brace*, 395 Ill. App. 3d 847, 853 (2009). The substantiality of a proposed change is "measured in terms of the effect that the change will have upon the rights of the other parties to the easement" (*id.* at 856-57), meaning the "court does not look to whether the change is substantial in its own right, but

rather to the way in which the correlative estate is burdened by that change" (*id.* at 858). Stated otherwise, substantiality in which the servient estate (the plaintiff in this case) wishes to modify an easement upon its property is properly measured in terms of the harm to the owners of the dominant estate (the defendant) in light of policy concerns such as the desire to encourage valuable improvements to servient estates without harming easement holders. *Id.* at 859. Whether a proposed change is substantial and whether the change has a negative impact on the dominant estate or other parties to the easements are generally questions of fact for the fact finder. *Id.* at 860.

¶ 38 Here, the plaintiff submitted evidence that the 2010 plan would not negatively impact the defendant's ingress-egress rights. Plunkard stated in his affidavit that the 2010 plan would not affect the defendant's current ability to ingress and egress over the properties. In response, the defendant submitted Ricci's affidavit in which he countered that the defendant's ability to access the nine-foot strip along the west edge of the hotel would be negatively affected by the 2010 plan. He further stated that the 2010 plan would impede the defendant's ability to access its dumpsters located within that strip. The defendant also submitted affidavits from Davis and Braun, who both indicated the 2010 plan would impede the defendant's ability to ingress and egress the properties and would impede its access to the nine-foot strip along the west side of the hotel. While Braun stated that the overall 2010 plan would not significantly impact the defendant's ingress-egress easement rights when completed, he opined that during the two-year-long construction project, construction equipment and other disruptions necessary to the project would significantly and negatively impact the defendant by interfering with its ability to ingress-egress the properties and would cause a loss to the defendant's available parking and parking revenue. We disagree with the circuit court that the defendant's evidence was merely speculative as the evidence presented raises factual issues regarding whether the 2010 plan was a substantial change and whether it would harm the defendant such that the proposed change should not be allowed. Such factual questions should not be determined as a matter of law in a summary judgment motion. See *Moore v. Everett Snodgrass, Inc.*, 87 Ill. App. 3d 388, 393 (1980) (summary judgment is inappropriate where a genuine dispute on any material fact exists). Accordingly, we reverse the judgment of the circuit court which granted the plaintiff summary judgment as to count II of the second amended complaint.

¶ 39 Finally, the defendant argues that the circuit court erred in refusing to modify its discovery order prohibiting counsel from disclosing the purchase price and closing date from the plaintiff's pending real estate contract for the sale of the Clinton Property. We disagree.

¶ 40 Supreme Court Rule 201(c) provides that a court may enter a protective order, either at the request of any party or even on its own motion, as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression. Ill. S. Ct. R. 201(c) (eff. Jan. 1, 2013); *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12. The circuit court has discretion to determine whether justice requires a protective order, and if so, what the parameters of the order should be. *Id.* We will not disturb the circuit court's decision unless the court has abused its discretion. *Id.* "A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principals of law; or if no reasonable person would take the position adopted by the court." *Id.*

¶ 41 The circuit court in this case determined that it was unnecessary for the defendant to publish the confidential terms in order to raise its mootness. The defendant has also not

established how the confidential nature of the purchase price and closing date has impeded it from investigating and raising a mootness defense. Rather, the defendant has simply made a conclusory allegation that the court's order denied it from "the opportunity to develop any theory of mootness and to investigate, thus, being unable to determine as to whether or not a declaratory judgment action was 'ripe.' " Further, it is undisputed that the real estate contract required the plaintiff to convey title free and clear of the pending litigation, and thus, the circuit court was correct in finding that, regardless of the confidential terms, the issues in the case at bar were not moot. Under these facts, we cannot find the circuit court abused its discretion in refusing to modify its protective order.

¶ 42 For the reasons stated, we affirm the judgment of the circuit court of Cook County as to count I of the second amended complaint and its denial to modify the discovery order pertaining to the plaintiff's real estate contract, and we reverse the judgment of the circuit court as to count II of the second amended complaint.

¶ 43 Affirmed in part and reversed in part.